## Shaw, as Shaw & Co. v. Ingram-Day Lumber Co.

(Decided February 19, 1913.)

### Appeal from Jefferson Circuit Court.
### (Common Pleas Branch, Second Division.)

1.  Contracts—Negotiations Conducted by Letter—Acceptance—When Contract Complete.—Where negotiations with a view of making a contract are conducted by letter, the contract is complete, when a distinct written offer made by one party is unconditionally accepted by an answer from the other party dispatched by mail, or otherwise, within a reasonable time after the letter containing the offer is received.

2.  Contracts—Offer to Sell Must be Accepted as Made.—It is elementary law that an offer to sell must be accepted as made, and that an acceptance in different terms, or upon other conditions, amounts only to a counter offer on the part of the buyer, which the seller may accept or reject at his pleasure.

3.  Contracts—Offer to Sell Imposes no Obligation Until Accepted According to Terms—Rejected Offer—Subsequent Tender of Acceptance.—It is also the law that an offer to sell imposes no obligation on either party until accepted according to its terms; and a proposal to accept or an acceptance upon terms varying from those offered, is a rejection of the offer and ends the negotiation, unless the offer is renewed or the proposed modification accepted; moreover, an offer which has been rejected cannot be revived by the subsequent tender of an acceptance of it.

4.  Contracts—Customs and Usages in Interpretation of—Uniformity.—A usage or custom of trade to be a guide in the interpretation of contracts, must be uniform, reasonable and generally known. No custom or usage, however well established can be incorporated into a contract if it is inconsistent with the clear intention of the parties. An expressed exclusion is not necessary; it is sufficient that the custom is excluded by necessary implication.

HARRY C. SHAW, for appellant.

DUFFIN, SAPINSKY & DUFFIN, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee sued the appellant in the court below upon an account for three car loads of lumber sold and shipped it, aggregating $538.45; and for the further sum

of $2.04, paid by appellee to a notary public for protesting a draft it drew upon appellant for the amount of the above account, which draft the latter refused to pay, thereby necessitating its protest for non-payment. The petition credited appellant on the amount thus sued for, with $194.87, freight charges paid by the latter upon two car loads of the lumber, leaving a balance of $345.62, for which judgment was prayed.

Appellees' claim was not controverted by appellant but the latter pleaded, in its answer, a setoff and counterclaim by way of damages for a larger amount, resulting, as alleged, from appellees' breach of a contract for the sale and delivery to it of five other cars of lumber. The damages thus claimed being, as alleged, profits, after deducting freight charges, which appellant would have made upon the lumber if received.

By an amended answer it was further alleged by appellant that the contract it had with appellee for the purchase of the lumber in question was made by means of letters which passed between them, and these letters, both those written by appellant to appellee and those received by it from the latter, on the subject of the lumber, were introduced in evidence on the trial of the case.

The burden of proof was upon the appellant to establish its set-off and counterclaim, and, after the introduction of its evidence, the court, upon appellees' motion, peremptorily instructed the jury to find for it. Thereupon, judgment was entered dismissing appellants' set-off and counterclaim and allowing appellee its debt and costs, and from that judgment this appeal is prosecuted. As there could have been no misapplication of the law by the trial court in granting the peremptory instruction, if the letters relied on by appellant to prove the contract alleged to have been made by it with appellee, failed to do so, the question presented for our decision by the appeal is mainly one of fact.

In our opinion only four of the several letters found in the record throw any real light upon the question of fact to be determined. These include the letter from appellant to appellee of June 19th, 1909; the answer of appellee thereto of June 22, 1909; that of appellant to appellee of June 24th, 1909, and appellee's answer to same of June 28th, 1909. These four letters are in words and figures as follows:

"Louisville, Ky., June 19th., 1909.
"Ingram-Day Lumber Co.,
      Lyman, Miss.,
Gentlemen:
      We have orders for the following stock that we can place with you at the prices indicated, if you think them justifiable: terms, cash less 2%, net to you, no commission included.

_____

      The next above F. O. B. Mill.
      We also have inquiries for the following stock on which we would be pleased to have you quote us your prices, F. O. B. Mill, and advise us if you are willing to guarantee the Association Weights:

_____

      3 cars 1 x 4 No. 1 common Flg.
      2 cars 1 x 4 B & Better Flg.
      You will favor us with an early reply as we wish to place our orders within the next week.
                        Yours truly,
                  FOREST G. SHAW & CO."
      To this the mill replied as follows:
                        "June 22nd., 1909.
"Forest G. Shaw & Co.,
      Louisville, Ky.
Gentlemen:
      Replying to your favor of June 19th., we are pleased to quote you three cars of 1 x 4 No. 1 common at $12.50 f. o. b. cars the mill, 2 cars B and Better at $16.00.
      We are not in a position to quote you on any other items on your inquiry.
      Thanking you for the inquiry, we are,
                        Yours truly,
                  INGRAM-DAY LUMBER COMPANY,
                        F. L. Platts, *Sales Manager.*
      And Shaw answered:
                        "Louisville, Ky., June 24th., 1909.
Ingram Lumber Company,
      Lyman, Miss.
Gentlemen:
      We have your favor of the 22nd., quoting us on three cars 1 x 4 No. 1 common flooring, $12.50, and two cars 1 x 4 B & Better, $16.00 f. o. b. mill, and you may enter our order for the five cars provided you are willing to guarantee the Association Weights. All stock to be

S2S&CM; terms cash less 2% on delivery. You may proceed to ship us one car of the 1 x 4 No. 1 common flooring immediately, and we will send you shipping instructions on the remaining four cars later.

If you desire references you may write The Commercial Bank & Trust Co., of this city, with whom we do business; The Hazelhurst Lumber Co., Hazelhurst, Miss.; C. W. Cochran Lumber Co., Meridian, Miss., and the J. J. White Lumber Co., of McComb City, Miss. You will not find us rated for the reason that we have only been in the wholesale business for ourselves for the past year and a half, but for your information will say, that we always discount our bills.

"Please quote us on anything else you may have to offer, and probably we can give you some more business. What is the best price you can make on about 6 or 8 cars 1 x 6 No. 2 common flooring S2S&CM?

Kindly advise us on receipt of this, whether or not you accept our order for the five cars, and how soon we may expect shipment of the first car.

Ship as large car as possible as our profit is very small.

Yours truly,<br>Forest G. Shaw & Co."

The plaintiff then wrote as follows:

June 28, 1909.

Forest G. Shaw Lumber Co.,
      Louisville, Ky.
Gentlemen:

We are in receipt of your favor of the 24th, and note that you want the five cars all S2S&CM. This is impossible for us as we are running all of our 4-in. stock standard matching. So far as association weights are concerned, we, of course, would expect to guarantee weights, or in other words, would make you a delivered price adding the freight at the established rate and based on association weights.

On 1x6 No. 2 common flooring, would say that we are oversold on this item and would not be in a position to offer any for at least 60 days.

Regretting that we are not able to get together on this, we are,                    Yours truly,
Ingram-Day Lumber Co.,<br>F. L. Platts, Sales Mgr."

It is appellant's contention that the correspondence

manifested by these letters resulted in a contract, whereby appellee sold and undertook to deliver to appellant, five carloads of lumber, only one car of which was delivered. Appellee contends on the other hand, that by neither by these letters nor otherwise, did it contract with appellant to sell it five carloads of lumber. We are unable to see that such a contract is shown by the letters in question. Briefly stated appellant by the letter of June 19th, called on appellee for a quotation of its prices on the five carloads of flooring. In its letter of June 22nd, to appellant, appellee, by quoting prices, offered to sell it the five carloads at the prices indicated. After receiving the letter of June 22nd appellant had the option, within a reasonable time, to accept or reject the proposal of sale made therein. By its next letter, which was that of June 24th, appellant did neither unqualifiedly, but instead told appellee to enter its order for the five cars upon the condition that all the flooring should be S2S&CM, meaning, "Surface two sides and center matched;" that is that each piece of flooring should be planed or dressed on both sides, as well as tongued and grooved. Nothing in its previous letter of June 19th, asking of appellee a proposition of sale and prices, indicated that the flooring inquired about was expected to be S2S&CM.

Appellants' letter of June 24th instead of being an acceptance of the proposition of sale contained in appellees' letter of June 22nd was more in the nature of a counter proposition, which had practically the same legal effect as an avowed rejection of appellees' proposition, and appellee had the right to so treat it and say nothing further on the subject. It did not, however, pursue that course, but, as we have seen, on June 28th, again wrote appellant telling it:

"We are in receipt of your favor of the 23rd and note you want the five cars all S2S&CM. *This is impossible* as we are running all of our 4-in. stock standard matching. Regretting that we are not able to get together on this, we are,

Yours very truly,

Ingram-Day Lumber Co."

It is patent that down to this time the minds of the parties had not gotten together, consequently there was thus far no contract between them. Appellees' letter of June 28th ended negotiations and left the parties as

they were before the first letter from appellant was written. It cannot be doubted that appellant thus understood it. This is fully shown by its letter to appellee of June 30th wherein it is said:

"We are in receipt of your favor of the 28th and note that it would be impossible for you to work the five cars of flooring S2S&CM, and it would be entirely satisfactory to us if you work it regular. Please get behind the car No. 1 common flooring, and let it come forward at once.

Yours very truly,
Forest G. Shaw & Co.,
per F. G. Shaw."

Appellant here manifested its knowledge that appellee had rejected its proposition as to the five cars of flooring, and therefore expressed its willingness to take them as first offered by appellee; but the offer thus made appellee declined to accept. This attempt to fall back on appellees' original offer was ineffectual and created no rights against the latter. An offer when once rejected, loses its legal force and cannot be accepted thereafter so as to create a binding agreement, without the assent of the party making the original offer.

The fact that appellee did, in compliance with appellants' urgent requests, subsequently furnish it one carload of flooring of the desired quality, in the light of all the correspondence, affords no proof that is was a part of the five carloads appellant wished to procure. On the contrary appellees' letter of July 26th in substance, advised appellant that it would endeavor to send it a single car, but would not fill its previously rejected order for the five cars. Nothing more than this was shown by any of the subsequent letters between the parties. Those written by appellant merely indicate that it was insisting that a contract had been made for the five carloads of flooring, and those of appellee that there was no such contract.

So the case we have, is one in which there was an offer by one party to sell, and a qualified acceptance by the other party, based on conditions not contemplated by the party offering to sell or embraced in his offer of sale. This being so, the qualified acceptance was but a counter offer on the part of the intending buyer, which the seller could accept or reject and did, in fact, reject; therefore the negotiations did not result in a binding contract.

"It is elementary law that an offer to sell must be accepted as made and that an acceptance in different terms, or upon other conditions, amounts only to a counter offer on the part of the buyer, which the seller may accept or reject at his pleasure." Cold Spring Dist. Co. v. Stitzel, 150 Ky., 457.

In Hutcheson v. Blakeman, 3 Metcalfe, 71, we held that in creating a contract the negotiation may be conducted by letter, and the contract is complete when the answer containing a direct and unconditional acceptance of a distinct proposition is despatched by mail or otherwise; provided it be done with due diligence after the receipt of the letter containing the proposal, and before any intimation is received that the offer is withdrawn; but the acceptance must be *unqualified*. Indeed the authorities in support of this proposition are so numerous and uniform that it is deemed unnecessary to quote from them in detail. New York Life Insurance Co. v. Levy, 122 Ky., 457; Provident S. Life Assn. Society v. Elliott, 29 R., 552; Hartford Life Ins. Co. v. Millett, 31 R. 1297; Henson v. Wilson, 21 R. 1382; Page on Contracts, Vol. 1, sections 37-44-45-46-47; L. & N. R. R. Co. v. Coyle, 30 R., 201; Minn. & St. Louis Ry. Co. v. Columbus Rolling Mill Co., 119 U. S., 140.

In the case last cited it was held that an offer to sell imposes no obligation on either party until accepted according to its terms; that a proposal to accept or an acceptance upon terms varying from those offered is a rejection of the offer, and ends the negotiation, unless the offer is renewed, or the proposed modification accepted; and moreover, that an offer which has been rejected cannot be revived by the tender of an acceptance of it.

These authorities are conclusive of the case at bar and, our examination of the cases relied on by appellants' counsel, convinces us that they are not in conflict with them.

We find no merit in appellants' defense that it was a custom among lumber men that when an offer is made, such as is contained in appellees' letter to appellant of June 22nd, it implies that the lumber will be S2S&CM, and that when appellant wrote appellee on June 24th, the letter containing his qualified acceptance of the latter's offer, it was not necessary for him to have made any reference to that feature of the contract. The evi-

dence introduced in appellants' behalf did not prove such a custom. A usage or custom of trade to be a guide in the construction of a contract, must be uniform, reasonable and generally known, and the evidence in this case falls short of establishing the custom according to these well known rules. Kendall v. Russell, 35 Ky., 503; Houston v. Peters, 58 Ky., 558; Caldwell v. Dawson, 61 Ky., 121; Eagle Dist. Co. v. McFarland, 14 R., 360. In Tamplett v. Saffell, 15 R., 31, the rule in question is stated in these words:

"No custom or usage however well established, can be incorporated into a contract if it is inconsistent with the clear intention of the parties. An expressed exclusion is not necessary; it is sufficient that the custom is excluded by necessary implication."

In our opinion the trial court did not err in giving the peremptory instruction directing a verdict for the appellee. The judgment is therefore affirmed.