## Caldwell, Jr. v. E. F. Spears & Sons.

(Decided November 28, 1919.)

### Appeal from Boyle Circuit Court.

1.  Contracts—Offer to Make Without Consideration—Withdrawal.— An offer, without consideration, to make a contract is not obligatory, and may be withdrawn at any time before acceptance, but if it is accepted in the terms in which it is made, within a reasonable time, under the facts and circumstances of the case, and before withdrawal, the contract is complete.

2. Contracts—Consideration—Acceptance of Offer.—Where the offer was to sell a crop of hemp, made under such circumstances as contemplated time for its acceptance, if such acceptance is made and communicated to the offerer the next day after the making of the offer, it will be determined as a matter of law that the acceptance was within a reasonable time, and the contract becomes binding from the communication of the acceptance, there having been no withdrawal of the offer in the meantime.

3. Trial—Instructions—Submission of Issues.—The court is not required to include in its instructions the submission of issues which are not disputed by the evidence.

4. Trial—Evidence—Accident or Surprise.—A party can not be said to be surprised at the testimony of a witness tending to establish the claim of his adversary, since such testimony is to be expected, unless, perhaps, he had been fraudulently misled or deceived by his adversary that no such contention as embodied in the testimony would be made on the trial.

5. Trial—Accident or Surprise.—Before a litigant can take advantage of a surprise such as contemplated by sub-section 3 of section 340 of the Civil Code, he must, at the time of its occurrence, manifest his surprise and seek his relief by moving to discharge the jury and for a continuance of the case, otherwise he will be deemed to have waived it.

6. Trial—Impeachment—Testimony of Juror.—The grounds upon which a jury rendered a verdict in a civil case may not be explained or the verdict impeached by the testimony of a juror as to what occurred in the jury room or explaining his reasons for agreeing to the verdict.

JOHN R. ALLEN, HENRY JACKSON and CHARLES FOX for appellant.

JOHN W. RAWLINGS and GEORGE E. STONE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Alleging the violation of a contract which they claim was held by them for the purchase of the 1916 hemp crop of the defendant and appellant, the plaintiffs and appellees brought this suit to recover damages for such violation, and there was a judgment in their favor for the sum of $1,907.88, to reverse which defendant prosecutes this appeal.

The contract relied on was an agreement between plaintiff and defendant by which the former was to purchase defendant's hemp at ten dollars per hundred pounds. The damages claimed is the difference between the agreed purchase price and the value of the

hemp at the time for delivery, which difference was four dollars per hundred pounds, calculated upon the basis of the amount of hemp, made up the sum returned by the jury in its verdict. Defendant made no denial of the amount of damages if he is liable at all, his only defense being that he made no contract to sell plaintiffs his hemp.

The grounds urged for a reversal are (1) that the court should have given to the jury, at defendant's instance, a peremptory instruction to return a verdict in his favor. (2) Errors in the instructions given to the jury, and (3) that the court should have granted the motion for a new trial because of (a) surprise which ordinary prudence on the part of defendant could not have guarded against, and (b) a misinterpretation on the part of two of the jurors of the court's instructions, whereby they were led to subscribe to the verdict which they otherwise would not have done.

Briefly considering these in the order named, it will be necessary in disposing of ground (1) to make a statement of some of the testimony given by the witnesses The plaintiffs are dealers in hemp, and have their principal office at Paris, Kentucky. In 1916 they had an agent in Boyle county, Mr. Richard Cobb, who was a farmer living about three miles from Danville. The defendant was also a farmer in that county, and on August 21 of that year plaintiffs' agent met defendant at Danville. The two differ in their testimony as to the place of meeting, the time, and as to what occurred. Cobb, the agent, testified in substance that defendant offered to accept ten cents per pound for his hemp, and that he then replied, "Well, I want to see what I can do here with the farmers today in locating crops and so on, and I will let you know." He says this conversation occurred about eleven o'clock a. m., in front of Cecil's store; that some time in the afternoon he met defendant on the street and the latter asked him: "Have you heard from your man yet?" To which the agent replied, "No, I wasn't going to call him until I went home. There is several fellows that is not in town that I expected to see and I will call those as soon as I go home, and let you know."

Defendant's version of the transaction is that he met the agent Cobb at about noon, in a restaurant in Danville; that the latter asked him what he would take for his hemp, whereupon he replied, "Mr. Cobb, I will take

ten cents per pound for my hemp to day." That he repeated that statement after he had finished his meal and was leaving the restaurant. He denies having any further conversation with the agent during the day about the matter. About six o'clock that afternoon Cobb from his residence telephoned the plaintiffs informing them of defendant's offer, and it was immediately accepted. Cobb then attempted to reach the defendant over the telephone, by calling the residence on his farm, his father's residence, and different places in the city of Danville. About nine o'clock p. m. he again called the residence of defendant's father (where defendant resided) but he was still absent, and word was left with his brother that plaintiffs accepted the proposition to purchase his hemp at ten dollars per one hundred pounds, the brother agreeing to deliver the message. Plaintiff did not return home until after his brother had retired, and he left his father's residence early next morning, before his brother arose, so that the message was not delivered to him until noon, after his return from a business trip which he had made to an adjoining county. Upon being notified by his brother of plaintiffs' acceptance, the defendant repudiated it upon the ground that it was not made within the time limit of the offer, which he contended was to be for that day only, and that the day ended at sunset.

Instruction No. 1 given by the court directed the jury to find for plaintiffs if they believed from the evidence that the offer of sale was not confined to the day upon which it was made, and instruction No. 2 directed them to find for defendant if they believed that the offer was limited to the day upon which it was made. As we have seen, the jury returned a verdict for the plaintiffs, thereby finding that the offer was not limited as defendant insisted.

So the question is narrowed to this point—whether the offer as testified to by the agent Cobb, and which his principal afterward accepted, followed by the communication of acceptance the next day after the offer constitutes a binding contract. It will be observed that the facts in the case do not present the question whether a bare proposal, unaccompanied by any previous negotiations or any facts or circumstances looking to a continuance of the offer, would constitute a contract if accepted by the

offeree at any time in the future, since both parties testified that the offer was to remain open, but differ as to the length of time.

The law upon the subject of the creation of a contract by the making of an offer and its subsequent acceptance is well stated in 13 Corpus Juris, pages 292 and 297. With reference to the making of the offer the text, on page 293, says:

"An offer, if not under seal, may be revoked or withdrawn at any time before it is accepted, and the acceptance communicated when communication is necessary, for until then there is neither agreement nor consideration. Where an offer is accepted before it is revoked, the contract is as obligatory as if both promises were simultaneous. Here, as in other like cases, if both parties meet, one prepared to accept and the other to retract, whichever speaks first will have the law with him; and this question is one of fact to be decided by the jury."

Concerning the acceptance of the offer, on page 297 the text says:

"An offer comes to an end at the expiration of the time given for its acceptance, a limitation of time within which an offer is to run being equivalent to the withdrawal of the offer at the end of the time named. Where no time is fixed in the offer it expires at the end of a reasonable time. What is a reasonable time depends largely on the nature of the particular offer and the circumstances of the case."

The opinions of this court are in full accord with the above excerpts, as will be seen from the following cases: Moxley's Admrs. v. Moxley, 3 Met. 309; Postal Telegraph-Cable Co. v. Louisville Cottonseed Oil Co., 140 Ky. 506; Shaw & Company v. Ingram-Day Lumber Company, 152 Ky. 329; Citizens National Life Insurance Company v. Murphy, 154 Ky. 88; Portland Cement & Coal Co. v. Steckel, 164 Ky. 420, and Hutcheson v. Blakeman, 3 Met. 80. All of the writers upon the subject of contracts state the doctrine substantially as above.

Accepting this as the law upon the subject, and the finding of the jury as to the character of offer made by the defendant as true, the only remaining question is whether the communication of the acceptance on the next day was within a reasonable time, under the circumstances of the case. That the answer should be in

the affirmative we think there can be no doubt. Indeed it is not insisted that the next day was not a reasonable time within which to communicate the acceptance, and we conclude that the court properly instructed the jury as embodied in instruction No. 1, submitting plaintiffs' theory of the case, and that no error was committed by refusing to direct a verdict in favor of defendant.

What we have said at least partially disposes of ground (2) urged for a reversal of the judgment. Under the contention therein made it is insisted by defendant's counsel that instruction No. 1 was erroneous in that it did not require the jury to find that plaintiffs had accepted the offer, and that it ignored the right of defendant to withdraw the offer at any time before acceptance because there was no consideration for it. These criticisms would be well founded if there existed any facts for their support. The acceptance of the offer by plaintiffs, and its communication to defendant next day in the manner hereinbefore stated, is not disputed and the law is that a gratuitous offer may be accepted within a reasonable time before withdrawal. Hence there was no room, under the facts of the case, for the qualification and modification of the instruction, as counsel insist.

The basis of a reversal as contained in subdivision (a) of ground (3) is that defendant was surprised at the testimony of the agent Cobb to the effect that the offer was not limited to the day upon which it was made, and in his motion for a new trial he filed affidavits showing that he had received a letter from plaintiffs about a year before the trial, in which they insisted that if defendant's version of the offer was accepted as true, the day did not expire until midnight, and since the acceptance was delivered at defendant's home before that hour, it was within time, although not communicated to him. Accompanying that letter was one from plaintiffs' attorney at Paris, Kentucky, giving his construction of the law as to the meaning of the word "day." From these facts it is argued that defendant was led to believe that plaintiffs would not contend that the offer extended beyond the day in which it was made, and that he was surprised when the witness testified to the contrary. There are a number of reasons why the court properly disregarded this ground for a new trial, one of which is that this

is not the character of surprise authorizing the granting of a new trial as contained in subsection 3 of section 340 of the Civil Code, since a litigant can not be said to be surprised when his antagonist offers testimony to establish facts supporting his contention in the case. The surprise contemplated by the Code is such as is not reasonably to be anticipated, or perhaps testimony contrary to a prior understanding between the parties or something resulting from actual fraud or deception. A second reason is that if it be conceded that the alleged surprise was sufficient, and of the character to authorize the granting of a new trial, it would then have been the duty of the defendant, in order to get the benefit of it, to ask for the setting aside of the swearing of the jury and con'tinuance of the case as soon as he was made aware of it. Liverpool, London & Globe Insurance Co. v. Wright and Allen, 158 Ky. 290; Howard v. Strawbridge & Clothier, 165 Ky. 88; Shipp's Admr. v. Sugett's Admr., 9 B. Mon. 5, and Ky. Distillers' Warehouse Co. v. Wells, 149 Ky. 275.

A third reason is that according to defendant's testimony he talked to the agent Cobb over the telephone on the morning of the nex't day after his brother notified him of the acceptance of the offer, and insisted that the acceptance came too late, which Cobb denied, claiming that it was made within the time limit of the offer. He therefore could not have been surprised at Cobb's testimony, which conformed to the contention made by him in that telephone conversation.

In subdivision (b) of ground (3), plaintiff insists upon the right to a new trial because two of the jurors claimed to have misunderstood the instructions of the court. In the first place there is absolutely no room for any misunderstanding of the instructions, since they are as plain and concise as it is possible for language to make them; but independent of this, it is a well established rule that a verdict may not be impeached, or grounds for its rendition explained, by the testimony of a juror, except in criminal cases a juror may be examined to establish the fact that the verdict was made by lot (Criminal Code, section 272); Taylor v. Geiger, Hardin 587; Heath v. Conway, 1 Bibb 398; Johnson v. Davenport, 3 J. J. Marshall 393, and Commonwealth v. Skeggs, 3 Bush 19. As said in the Davenport case, which is quoted with approval in the Skeggs case:

"The dangerous tendency of receiving testimony of the jurors for such a purpose is too obvious to require comment. It would open the door so wide, and present temptations so strong, for fraud, corruption and per-jury, as greatly to impair the value of, if not eventually to destroy, this inestimable form of trial by jury."

Upon the whole case we are convinced that none of the grounds relied on are sufficient to authorize a new trial, and the judgment is therefore affirmed.