## Williams v. Harvey, et al.

(Decided November 4, 1921.)

### Appeal from Barren Circuit Court.

1. Reformation of Instruments—Mistake.—A written instrument may be reformed where there is an allegation and proof of a mutual mistake or a mistake upon one side and fraud or inequitable conduct on the other.

2. Appeal and Error—Findings—Boundaries.—In a dispute between parties as to the location of one of the lines of a boundary of timber land where the facts have been submitted to and decided by the chancellor, and upon a consideration of the whole case the mind is left in doubt as to the correctness of the judgment, his findings will not be disturbed.

C. H. HATCHETT for appellant.

BASIL RICHARDSON for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellant owned a farm of approximately 40 acres near Glasgow. In July, 1918, he entered into a contract with appellees wherein for the consideration of $1,000.00 he sold to J. B. Harvey (hereinafter for convenience referred to as appellee) the merchantable timber, 12 inches and up in diameter, 12 inches from the ground, on the acreage aforesaid, reserving two red oak trees for his personal use. Appellee was given one and one-half years in which to cut and haul said timber. In the event appellant decided to clear a part of the land, not exceeding 12 acres, appellee agreed to remove or have removed the timber off such part when requested. The boundary containing the timber purchased was pointed out to appellee by appellant's agent, but when a check for the purchase price was delivered to appellant, he (appellant) undertook to mark a boundary different from and containing a lesser acreage than that which appellee claims

he had purchased. Insisting he was entitled to the timber on the tract as described by appellant's agent and as pointed out to him, appellee proceeded to cut the timber therefrom.

Thereafter appellant instituted this suit alleging it was understood and agreed between him and the appellee that the deal was not to be consummated until the land had been fully marked off and described, but that this provision was left out of the writing by mistake or oversight.

It was alleged that appellee's agent had agreed upon the boundary as contended for by appellant and with this understanding the contract was closed, but that thereafter appellee and those claiming under him, in cutting the timber off said land encroached upon and were cutting other timber not included in the boundary agreed upon and had cut at least five trees therefrom. It was also claimed that appellee had not cut the timber from the 12 acre tract as requested. The purpose of the present suit was to enjoin and restrain appellees from going upon and from cutting timber on the land in dispute.

The answer denied the allegations of the petition and set up certain affirmative defenses. Upon final hearing the petition was dismissed and appellees were adjudged entitled to the timber in controversy and given the right to enter upon said land and cut and remove the timber standing or lying thereon, in accordance with the contract as contended for by them.

The question raised upon this appeal is purely one of fact. Accepting appellant's theory, the line would run through a wooded tract and exclude some four or five acres of timber land within the boundary which appellee claimed to have purchased. There is no allegation of mutual mistake. Reformation is not sought. A written instrument may be reformed where there is an allegation and proof of a mutual mistake, or of a mistake upon one side and fraud or inequitable conduct upon the other, but where a writing does not embrace the terms of the contract, because of the omission of some provision, due to the mistake of one of the parties only, and the other is free from fraud or inequitable conduct, the instrument cannot be reformed so as to omit or embrace terms other than those stated since to do so would be to make a contract which the parties had never made. Scott v. Spurr, 169 Ky. 575, 184 S. W. 866.

Appellant testifies that C. H. Shannon, appellee's son-in-law, who delivered the check in payment of the timber, agreed to the boundary as marked by appellant, and it was not until Shannon so agreed that the check was accepted and the signed contract delivered.

Not only do appellee and Shannon deny that the latter had any authority to bind appellee or to agree to the boundary as marked by appellant, but Shannon says he delivered the check fully relying upon the statement and representation of appellant that appellee understood the line to be as marked by appellant and they had agreed on same.

Appellant admits that when he agreed with appellee upon the terms of the purchase nothing was said about the boundary; that he, appellant, supposed his agent Sharp had shown appellee the proper lines. Much weight cannot be given to the contradictory testimony of the witness Sharp. While he testifies the check was not to be delivered until the boundary was established, he states time and again that appellant said nothing in the beginning about not accepting the money until the land was marked, and did not, in fact, make this statement until some time after the matter had been closed. Sharp says that aside from the two board trees reserved in the contract he never heard anything about the reservation of any part of the boundary and that appellant estimated the entire boundary at 35 or 40 acres. According to this same witness, who was introduced by appellant, it was not until after the contract was signed that appellant claimed the line ran through the timber. Again Sharp testifies that appellant never pointed out the entire boundary to him and that the timber which appellant showed him was in one boundary.

For appellee it is substantially shown that the purchase included all the timber between the road and the field described in the evidence, excepting only the two trees, and that the agent Sharp said he was authorized to sell all the timber. The value of the timber within the confines of the boundary as contended for by appellant is fixed by several witnesses at $800.00. It is also shown that in the excluded boundary there were some twelve or more good board trees, and appellant admits that of the five trees cut in the excluded boundary two of them were large enough for board timber Thus the query naturally suggests itself why should appellant reserve two trees, the quantity admittedly sufficient for his future

needs, if, as he claims, he had a much greater number of large trees on the excluded tract? Appellee's intention being to purchase all the timber on the 40 acre tract of land owned by appellant, it is hardly probable he would have agreed to accept a boundary, a line of which passed directly through the standing timber, cutting off four or five acres of the timbered land. The proof abundantly shows that the contract made between the parties was as claimed by appellee, hence, the lower court properly dismissed the petition and granted the affirmative relief asked by appellee. We are satisfied as to the correctness of the court's conclusion, but if we entertained any doubt in this regard the judgment would nevertheless have to be upheld under that very familiar rule of equity jurisprudence, that where the evidence is conflicting and the question of fact by reason thereof difficult of solution, if upon consideration of the whole case the mind is left in doubt as to the correctness of the chancellor's judgment, his findings will not be disturbed.

The judgment is accordingly affirmed.