## Brookshire, et al. v. Hughes, et al.

(Decided May 13, 1924.)

### Appeal from Boyle Circuit Court.

1. **Adverse Possession—No Adverse Possession where Fence Located by Mistake Without Intention to Claim.**—Where a fence is located by a mere mistake, and with no intention of occupant to claim land which does not belong to him, claim is not adverse.

2. **Reformation of Instruments—Mistake or Fraud Necessary to Relief.**—Rule that, where vendor points out boundary and vendee buys to boundary so pointed out, and without his knowledge deed is made not including land pointed out, vendee may have relief, does not apply where there is no fraud or mutual mistake.

3. **Reformation of Instruments—Purchaser Not Entitled to Reformation Because Part of Land Not Pointed Out.**—Where it was understood that vendor intended to sell, and her deed conveyed, all the land owned, purchaser cannot have deed reformed to exclude so much as lies outside the boundaries mistakenly pointed out to him, it being of the same quality as that within the boundary as pointed out.

GOURLEY, GOURLEY & PARRISH for appellants.

RODES & RODES and E. H. GAITHER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

This is a controversy about 19.24 acres of land in Boyle county which is roughly indicated on the following plot:

The facts are these:

John J. Craig owned a tract of land containing 556.862 acres; after his death his executrix had the tract cut up into three tracts by survey and at the sale John W. Hughes bought one tract containing 244.81 acres; George Vermillion and A. M. Feland bought a tract lying south of the Hughes tract containing 119.01 acres. The line between these two tracts as located by the surveyor who made the survey is represented on the plot by the line A-B. The surveyor set a stake at A and also a stake at B, but there were no intervening marks on the line as it ran through an open field. A farm fence ran from A to C on the plot and before the sale some one by mistake set a flag at D. At the sale it was announced that the flag indicated the line. Acting on this information Vermillion and Feland continued the fence from C to D and enclosed in their boundary all the land lying south of the line A-D. Hughes contributed to the building of this fence and afterwards contributed to repairing the fence from A to C, both of the parties being ignorant that this was not the true line. In this condition of affairs Hughes died and after his death on November 12, 1919, his widow, who then owned the Hughes tract, had a public sale, at which

this tract was sold. When the bidding had reached about $230.00 an acre A. J. Brookshire and Coleman Denton, who lived at Irvine, Kentucky, and had come to the sale without an opportunity to look over the land asked that they be given an opportunity to see the farm and the sale was suspended for two hours, and someone there looking after the sale had a negro to hitch a horse to a buggy and drive them around and show them the farm. This negro showed them the fence along the line A-D as the southern boundary of the farm. When the sale was resumed they bought the land at $296.00 an acre and the deed was made to them; but before the transaction was concluded by the signing up of the papers the attorney representing Mrs. Hughes proposed to them to have the land surveyed so there would be no mistake about the boundary, but they said this was unnecessary and accepted the deed. Some time after this they had the land surveyed and it developed that the tract lying north of the line A-D only contained 229.29 acres. They paid for this number of acres at the agreed price per acre but declined to pay more, and then for the first time Mrs. Hughes learned that the 19.24 acres which was included in her deed was not included by the fence, which up to that time had been recognized by the parties as the line. Vermillion had sold out to Feland, who by his answer only claimed the 119.01 acres which he bought and consented that the fence might be set along the true line, each party paying the cost. In his testimony given as a witness he in substance says the same thing. Brookshire and Denton claim that they only bought the land lying north of the fence and that they should not be required to pay for the 19.24 acres lying south of the fence although within the boundary specified in the deed which they accepted. The circuit court gave judgment against them and they appeal.

There is no question that Mrs. Hughes sold the entire tract which was covered by her deed. The idea that only a part of this tract was sold entered nobody's contemplation. It was well understood, both from the written advertisements and what was said at the sale, that the whole tract was sold as it had been conveyed by Craig's executrix, and this was clearly set forth in the deed which appellants accepted. If the survey as proposed then had been made the mistake would have been discovered and this trouble would have been averted. The land lying south of the line A-D and between that line and the line

A-B is practically the same quality of land as that lying north of A-D. Appellants understood that they were buying 244.81 acres, and though they were mistaken as to the true location of the south line of the tract there was no mistake on their part as to what they bought. Mrs. Hughes intended to sell the whole tract that she owned and they intended to buy the whole tract. Mrs. Hughes would have no means of access to the triangle in contro- versy which would be entirely surrounded by the land of others. No question of champerty is involved in the case as Feland does not claim to hold the land in adverse possession. The rule is that where a fence is located by a mere mistake and with no intention on the part of the occupant to claim as his own land which does not belong to him but with intention to claim only to the true line the claim is not adverse. Turner v. Morgan, 158 Ky. 512.

There are numerous cases holding that where the vendor points out a boundary to the vendee and he buys to the boundary so pointed out, and without his knowl- edge a deed is made which does not include the land pointed out to him and without which he would not have bought, the vendee may have relief; but this rule rests on mutual mistake or fraud and does not apply where there is no fraud or no mutual mistake. The authorities relied on for appellant all fall within the principle above indicated and do not apply to a case like this, where simply all the land conveyed was not pointed out and the part not pointed out was practically the same as what was pointed out and the deed which was accepted both in its calls and in the quantity conveyed included all the land

> "A written instrument may be reformed where there is an allegation and proof of a mutual mistake, or of a mistake upon one side and fraud or inequit- able conduct upon the other, but where a writing does not embrace the terms of the contract because of the omission of some provision, due to the mistake of one of the parties only, and the other is free from fraud or inequitable conduct, the instrument cannot be reformed so as to omit or embrace terms other than those stated, since to do so would be to make a contract which the parties had never made." Wil- liams v. Harvey, 192 Ky. 684.

To reform this deed as asked by appellants would be to make for Mrs. Hughes a contract neither of the

parties intended to make; for they both contemplated a sale of the Craig tract as recited in the deed. A·recission of the contract on the ground that the minds of the parties never met cannot be decreed for the reason that there is no material difference between the nineteen acres and the remainder of the tract. If this land had doubled in value since 1919 by the discovery of oil or gas on it, appellants would be entitled to hold it under their deed and Mrs. Hughes would be estopped to claim it. The rule must be the same when the price of land has fallen.

In such cases equity looks to the substance of the matter. The negro was told to show appellants the farm. No question of exact boundary was in anybody's mind then. The land lying south of the line A-D being substantially the same as the remainder of the tract and appellants having declined appellees's offer to have the land surveyed no substantial reason for relief in equity is shown by them.

Judgment affirmed.