## Levi v. National Surety Company.

(Decided June 21, 1929.)

236

PETER, LEE, TABB & HEYBURN for appellant.

GIFFORD & STEINFELD for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Affirming.

On August 16, 1921, appellee, National Surety Company, as a surety for and on behalf of the Durrett Construction Company, executed to the state highway commission of the state of Kentucky two bonds guaranteeing the former's completion of two road projects in Hart county, Ky., designated as federal projects Nos. 7A and 7B. The bond for project 7A was in the penal sum of $10,500, and that for project 7B was in the penal sum of $16,500.

Durrett Construction Company delivered to appellee written applications for each of these bonds, in which it was recited that the amount of the contract on section 7A was $47,800, and that the amount of the contract on section 7B was $20,200, and, as a premium or charge for said bonds, it agreed to pay appellee at the rate of $15 per $1,000 of contract amount. These applications were dated August 17, 1921.

By a writing bearing date of August 18, 1921, styled "Third Party Indemnity Agreement" and signed by Joseph Levi personally, he undertook and agreed, among other things, "to pay, or cause to be paid, the premium or premiums for said bond or bonds in strict accordance with the terms of the application, a copy of which is, or may be, hereto attached as a part of this instrument."

Afterwards appellee sued Durrett Construction Company in the Whitley circuit court to recover the premiums for these bonds and on June 4, 1925, recovered a judgment against it for $1,020, with interest from August 16, 1921.

On the 7th day of August, 1926, it instituted this action in the Jefferson circuit court against Joseph Levi, to recover of him the premiums for the two bonds. It was alleged in the petition that the premium for the bond for project 7A was $717, and the premium on the bond for project 7B was $303. It was further alleged that it had instituted suit in the Whitley circuit court against Durrett Construction Company to recover of it the premiums, and in that action on June 4, 1925, a judgment was given in its favor against Durrett Construction Company for the sum of $1,020, with interest from August 16, 1921, until paid, and its cost amounting to $35.45, but that no part of this judgment had ever been paid, and that Durrett Construction Company had become bankrupt and was wholly insolvent, and that by reason of the indemnity agreement the defendant, Joe Levi, was responsible and indebted to it for the premiums on the bonds. Shortly after filing the suit, Joseph Levi died, and the appellant qualified as his executrix. Thereupon the action was revived against her and the estate of Joseph Levi.

Mrs. Levi defended upon the ground that it was the custom among bonding companies, such as plaintiff, to regard the amount of the contract, as stated in the application for bond, as a mere estimate, and to calculate the premium on the actual amount of the contract; that at the time of the execution of the bonds, work to the amount of $5,494.28 only remained to be done on section 7A, and that work to the amount of $16,616.90 only remained to be done on section 7B; that the premiums due for the bonds should be calculated on these sums and amounted to $82.41 and $249.25, respectively, for which she admitted liability and offered to confess judgment. Under a peremptory instruction the jury returned a verdict for appellee for $1,020, for which the court rendered judgment, with interest from August 16, 1921. Mrs. Levi has appealed.

It is urged by appellant that the action is based upon the judgment of the Whitley circuit court; that Joseph Levi was not a party to that action, and was not bound by it; or, if the petition sets up a cause of action on the indemnity agreement, there is no proof that the indemnity agreement was agreed upon before the bonds were

signed, and it was for that reason without consideration; that as only $5,494.28 of work on section 7A and $16,-616.90 of work on section 7B remained to be done when appellant executed the bonds, under the custom relied on, appellant was only liable for a premium on those amounts.

1. Neither Joseph Levi nor his estate after his death was bound by the judgment of the Whitley circuit court. Mr. Levi was not a party to that action, either personally or by representation. The petition in that case is not before us, but, since a recovery is adjudged against Durrett Construction Company, only, it is apparent the action was merely an attempt to recover against it on its obligation for the premium which it agreed to pay.

However, the petition here is based altogether upon the indemnity agreement, and the allegations concerning that judgment are merely by way of inducement of the contention that, since Durrett Construction Company was insolvent, appellee was entitled to recover against Mr. Levi in virtue of the indemnity agreement.

2. While the bonds executed, the applications for the bonds, and the indemnity agreement are dated, respectively, August 16, August 17, and August 18, 1921, it is apparent they are all component parts of a single transaction. The difference in dates is immaterial. The bonds mentioned in the applications and the indemnity agreement are admittedly the bonds executed, the premiums for which are sued for. The indemnity agreement recites the fact that Mr. Levi has "a substantial, material and beneficial interest in the obtaining of said bond, or bonds," and which are, of course, the bonds executed by appellee and the premiums for which are sought to be recovered by this action. Hence we conclude the fact that the indemnity agreement is dated two days subsequent to the execution of the bonds is immaterial, especially since appellant admits a liability thereunder for the premiums calculated on what she claims is "the amount of the contract."

In the application for the bond covering the contract on section 7A it is set forth that "the amount of the contract is $47,800"; and in the application for the bond covering the contract on section 7B, it is set forth that "the amount of the contract is $20,200.00"; and in each of the applications it is then provided: "And the undersigned hereby agrees to pay to the company as a premium or

charge for the bond applied for, at the rate of $15.00 per $1,000 of the contract amount.''

It is alleged in the amended answer that ''by the term 'amount of contract' referred to in the application for bonds, was meant the contract price for the work to be completed by the principal in the bond, in this case, Durrett Construction Company, after the date the bond was given''; and it was further alleged that the recital of the amount of the contract in the applications ''was a mere estimate and a mistake;'' but is is not alleged in either the original answer or amended answer that the ''mistake'' was a mutual mistake; nor is it alleged that there was any agreement or understanding that ''the amount of contract'' was to be limited to the amount of work to be done after the execution of the bond.

There is no proof that ''the amount of the contract'' was limited to the work that remained to be done after the execution of the bond, nor are the avowals as to what the witness Morris would have said in answer to certain questions in that connection to which objection was sustained subject to any such interpretation. But if there had been any proof of that character, we do not think it competent in the absence of a plea of mutual mistake in the execution of the applications. Commercial Auto Co. v. Brandies Machinery & Supply Co., 198 Ky. 155, 248 S. W. 233; Williams v. Harvey, 192 Ky. 684, 234 S. W. 315.

The applications recite the amount of the contracts and contain an unconditional promise to pay a premium or charge for the bonds at the rate of $15 per $1,000 of the contracts. No custom or usage, however well established or proven, could operate against that provision.

In 27 R. C. L. 172, it is stated:

''There is an obvious distinction between the introduction of custom or usage in explanation of an instrument, and in contradiction thereof; between showing a meaning in harmony with the intention of the parties, though different from the apparent meaning, and a meaning different from that which they actually intended, and it is well settled that evidence of custom or usage cannot be introduced to contradict the plain terms of an instrument, or to vary, qualify, restrict or enlarge the explicit language of the instrument. Usage or custom can never be shown to give an interpretation to a contract inconsistent with its language. . . .

"Furthermore, evidence of custom or usage is inadmissible to add to, or engraft upon, an agreement new stipulations, when the agreement, as it stands, is plain."

In keeping with that rule, in Shaw v. Ingram-Day Lumber Co., 152 Ky. 329, 153 S. W. 431, L. R. A. 1915D, 145, quoting from Tamplet & Washburn v. Saffell, 15 Ky. Law Rep. 31, the court said:

"No custom or usage, however well established, can be incorporated into a contract if it is inconsistent with the clear intention of the parties."

By the contract sued on, Joseph Levi guaranteed the payment of the premiums sued for; by his agreement he declared that he had "a substantial, material and beneficial interest in the obtaining of the said bond or bonds;" he voluntarily executed the indemnity agreement and thereby undertook that he would pay the premiums sued for.

Wherefore the judgment is affirmed.