## Kane v. Hopkins et al.

February 22, 1949.

W. J. Goodwin and D. L. Frederick for appellant.

Dodd & Dodd for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSONER—Affirming.

The appeal is from a judgment dismissing appellant's petition seeking to recover from appellees certain sums allegedly due him by reason of certain business ventures which hereinafter will be described. Appellant is a contractor and appellees are real estate agents, who were partners, at the time of the commencement of their negotiations with appellant. On October 17, 1940, appellant on the one part, and appellees, jointly, on the other, formed a partnership for the purpose of constructing and selling houses in Jefferson County. The partnership was evidenced by a written agreement and is referred to in the evidence as Exhibit A of the petition and Kane Exhibit 1, but it does not appear in the record brought to this Court. However, from the evidence we gather that by its terms appellant agreed to supervise the construction of the houses and appellees agreed to sell them, and appellees agreed to furnish a man "to buck the time of" appellant. The parties incorporated in the contract a formula by which to arrive at the net profits for purposes of distribution, and such profits were to be distributed as follows: Appellant to receive all of the net profits up to, but not exceeding, five

per centum of the cost of construction; should such net profits exceed five per centum of the cost of construction appellees, jointly, were to receive all of such excess up to, but not exceeding, the amount theretofore received by appellant; should such net profits exceed ten per centum of such cost such excess was to be divided into two equal parts, appellant to receive the one and appellees, jointly, the other. Thereafter the written contract was modified but the parties are not in agreement as to the terms of the modification. Appellant contends that he was to receive the first five per centum of the profits after which there should be an equal division between the three, viz., Kane, Long, and Hopkins. On the other hand, appellees contend that the entire profits were to be divided on the basis of one third to each without first crediting or paying to appellant the five per centum contended for by him. Before the modification of the written contract seventy-three houses were built. Thereafter and before the forming of the corporation hereinafter referred to the partners built twenty-nine houses. After the formation of the corporation they built thirty-five houses.

On March 6, 1942, the three partners formed a corporation, each subscribing to one-third of its stock. The entire assets of the partnership were transferred to the corporation in full payment of the working, and perhaps the authorized, capital. The preparation and filing of the articles of incorporation constituted the only formalities performed in distinguishment of the character of operation as engaged in by the partnership; in other words, although the corporation was formed, the assets of the partnership transferred to it, and business conducted in its name, no other formality usually attendant upon the functioning of a corporation was observed or performed. This fact is material only to the extent that it throws some light on the terms of the modifications of the original written agreement and supports appellees' contention in respect thereto. In the latter part of the year 1942, appellant became dissatisfied with his business connection with appellees, whereupon he asked for a dissolution of their association and a settlement in respect to all of their business enterprises. Shortly thereafter a written settlement was entered into between the parties.

At the time of entering into the settlement, construction of some of the houses had not been completed, and as a part of the settlement, appellant agreed to complete the construction of the unfinished houses and was allowed the sum of $2,773.79 for doing so. Appellant testified that after the settlement was entered into additional bills were received. Wherefore, he requested appellees for an adjustment of the settlement. Upon their refusal appellant caused an audit of all of the transactions of the partnership and corporation to be made, as a result of which this suit was filed. In the course of the litigation appellees caused an audit to be made of all the records of the partnership and corporation, and both audits were introduced in evidence together with over eight hundred pages of testimony.

It is apparent that neither audit is accurate because of the lack of certain records, but the Master Commissioner found without pointing them out that some errors in favor of each of the parties were made in calculations used as the basis for the settlement. It would be extremely difficult for us to determine from the audits the amount either of the parties might owe the other, if, under the rules of equity, the Court were at liberty to inquire into the transactions previous to the execution of the settlement.

In his petition appellant seeks to have the settlement set aside and to reopen the entire controversy on the ground of fraud on the part of appellees or mutual mistake in arriving at the settlement. Appellant testified that appellees agreed to furnish a bookkeeper for the partnership, but did not do so, and charges all errors to appellees because of their failure in this respect. The wording of the contract upon which he bases his statement that appellees agreed to furnish a bookkeeper is that part of the contract wherein appellees agreed to furnish a man "to buck the time of" appellant. But, if his contention in this respect is correct, the fact that appellees did not furnish a bookkeeper was well known to him at the time he made the settlement; as a matter of fact, he admitted that first his own bookkeeper, then he in person made by far the most of the entries on the records. If any bills were outstanding at the time of the settlement, they were bills which, according to his own

testimony, he had incurred on behalf of the corporation; and certainly he would be charged with knowledge of such accounts. All of the records available to appellees likewise were available to appellant before and at the time of entering into the settlement, and the parties were dealing with each other at arm's length. There was considerable bickering between them after the submission by appellees of a draft of a proposed settlement, and at least two changes were made before the final draft was agreed upon, both of which inured to the benefit of appellant. The settlement was arrived at on the basis of an equal division of the profits between appellant and appellees, jointly, on the first seventy-three houses; and on the basis of one-third each on the remaining sixty-four houses. In asking that the settlement be set aside and that the Court determine the rights of the parties, appellant asserts his right to the first five per centum of the profits as originally contemplated in the partnership agreement.

Undoubtedly, a contract such as the one under consideration may be set aside for fraud by a Court of Equity; but neither the Master Commissioner, Chancellor, nor we find any evidence upon which to base even a suspicion of fraud in this case. This brings us to the second charge, viz., that the settlement was arrived at as a result of mutual mistake of the parties. The law in respect to the rescission of a contract on the ground of mutual mistake is well stated in Fields v. Cornett, 254 Ky. 35, 70 S.W.2d 954, 957 wherein the Court said:

" ' "A mutual mistake is one in which both parties participate by each laboring under the same misconception." Coleman v. Illinois Life Ins. Co., 82 S.W. 616, 26 Ky.Law Rep. 900.' * * *

" 'But where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into error or not sooner making redress, and no intervening rights having accrued and the parties may still be placed in statu quo, equity will interfere in its discretion to prevent intolerable injustice.' * * *

" 'Equitable relief from a mutual mistake is fre-

quently given by a reformation of the contract. But a contract will not be reformed for an unilateral mistake. Equitable relief may, however, be given from an unilateral mistake by a rescission of the contract. Essential conditions to such relief are: (1) The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable. (2) The matter as to which the mistake was made must relate to a material feature of the contract. (3) Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake. (4) It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him in statu quo.' "

At all times previous to and at the time of entering into the settlement, the parties construed the written contract as one for equal division of the profits, and after the written contract's oral modification they construed the modification as calling for a division of the profits on the basis of one-third each. When the written settlement was entered into, appellant was as familiar with his rights in respect to the first five per centum of the profits as he was later, and he certainly cannot charge appellees with fraud in this respect, nor can he charge a mutual mistake. The agreement complained of was the settlement of a controversy in respect to the accounts. Appellant admits that he was cognizant of the fact that under the original partnership agreement he was entitled to receive the first five per centum of the profits, thus he entered into the settlement with his eyes open and armed with all the information in this respect that he possesses now. In short, there was neither fraud nor mutual mistake in respect to this item. He now contends that after the modification and before the incorporation he was still entitled to the first five per centum of the profits. When the corporation was organized each of the partners became the owner of one-third of the stock, although no certificates were issued. This fact, as we have heretofore indicated, militates against appellant's contention that he was entitled to the first five per centum after the modification of the original agreement, because appellant admits the affairs of the corporation were carried on in a manner identical to those of the part-

nership. But whether appellant actually was or was not entitled to the first five per centum is of little import. He made no contention in that respect when he entered into the settlement, and he was as cognizant of his rights at that time as he is now.

That whatever mistake, if any, was made in arriving at the settlement, was not a mutual mistake is apparent from the facts stated in the petition and in the testimony of appellant. He has charged, and still contends, that appellees knowingly withheld information, and he testified that he was the only person mistaken as to the facts in respect to the matters upon which the settlement was based. Therefore, if any mistake was made it was an unilateral mistake. Under the rule recited in Fields v. Cornett, supra, on which appellant relies, the third essential condition to afford relief from a contract by reason of an unilateral mistake is: ''Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake.'' Since appellant was the party making the mistake, if any was made, he must have exercised ordinary diligence as a prerequisite to his right to have the settlement set aside; and, since most of the records were in his possession and the rest were available to him and he was dealing with appellees at arm's length and questioning the accuracy of certain items, it cannot be said that he exercised ordinary care when he failed to examine the remainder of the records to determine the accuracy of the accounting in respect to them.

Finally it is argued that the parties were mistaken in estimating the amount required to be expended to finish the houses, and by reason of such mutual mistake appellant in the settlement was not allowed a fair sum for this work. This contention can be answered briefly. If every contract could be rescinded on the ground that the parties underestimated or overestimated the cost of construction or manufacture of the subject of the contract, one venturing into business would risk little and have an opportunity to gain much. Aside from that, appellant was a contractor and must be deemed to have had more knowledge of costs of construction than appellees. He now cannot complain on the ground that he struck a bad bargain.

We are of the opinion that the Master Commissioner and the Chancellor were correct in holding that **(1)** there was no fraud perpetrated on appellant by appellees; (2) there was no mutual mistake; and (3) if any mistake was made, it was an unilateral one, and appellant failed to exercise ordinary care by the simple medium of examining records which, if not in his own possession, were accessible to him. .

The judgment is affirmed.