Lawrence CASNER, Appellant,

v.

Basil OLDHAM, Appellee.

Court of Appeals of Kentucky.

May 13, 1955.

Nichols & Nichols, Madisonville, for appellant.

Thomas S. Dawson, Louisville, for appellee.

MONTGOMERY, Judge.

By written agreement dated June 27, 1945, Lawrence Casner and Basil Oldham formed a partnership to engage in the construction business. The partnership was dissolved by written agreement on August 8, 1947. On May 2, 1949, Oldham filed an action against Casner, seeking an accounting and final settlement of the partnership accounts.

The trial court rendered an opinion concerning various contested items, including the effect of the dissolution agreement and a transaction covering the transfer of Oldham's interest in a lease and building. Appellee Oldham had contended that the partnership records and books were kept under appellant Casner's direction. He claimed to have relied upon representations of Casner, and that fraud had been committed by Casner in receiving money and property not reflected by the books. The dissolution agreement was upheld. Appellee received judgment for $2,500, based upon the building and lease trade, and this is the only matter with which we are concerned on the appeal.

The question is whether appellant is indebted to appellee in the additional sum of $2,500 for his interest in the building and lease hereinafter called the "Arnold lease".

At the time of the partnership formation, appellant held a lease for a term of years on a vacant lot in Madisonville, Kentucky. The partners agreed to erect a building thereon, and appellant, without cost to appellee, assigned him a one-half interest

therein. Part of the building was leased to one Kelley Bennett for a term coextensive with their lease, for which Bennett paid $5,300 and agreed to pay a monthly rental of $25. In the testimony, this transaction was referred to as a transfer of part of the Arnold lease.

The $5,300 paid by Bennett was carried in a separate account on the partnership books, designated "Deferred Income-Sublease", against which $24.54 was to be charged monthly during the term of the Bennett lease. Three charges had been made against this account when the balance of $5,226.38, on January 31, 1947, was transferred to the undivided profits account and ceased to be carried as an asset of the partnership.

By this time, differences had arisen between the partners. On January 28, 1947, appellant, in an effort to dissolve the partnership, made a written "buy or sell" offer to appellee to run for sixty days in which the property involved was described as follows:

"1. All my capital account or investment in business, less any accounts that I owe the company.

"2. $7,500.00 for my one half interest in the store building located on the Arnold property.

"3. One half of the undivided profits of Partnership as of date of settlement."

The second item indicated a valuation of $7,500 fixed by appellant on a one-half interest in the Arnold lease. At this time, the $5,226.38 was still carried as an asset instead of undivided profits.

Appellee was unsuccessful in making the necessary financial arrangements to buy out appellant. The "buy or sell" offer was then abandoned upon the insistence of appellee that the partners continue in business.

The question of sale of the one-half interest in the Arnold lease then arose. Appellee claims he was to receive $7,500 as suggested by the "buy or sell" offer. Appellant claims that appellee offered to sell for $5,000, and he accepted. On February 28, 1947, appellee reassigned his interest in the lease covering the property involved, which, in effect, transferred his one-half interest in the building constructed. He received in payment a transfer of $2,000 to his capital account in the partnership from the capital account of appellant, plus a check for $3,000, in addition to his one-half interest in the Bennett fund previously transferred to undivided profits. The check bore the following notation: "Final balance due on one-half interest in building on Arnold lease." It was endorsed by appellee and cashed on March 3, 1947.

In view of the question involved, the status of the parties should be reviewed at this point with reference to their respective investments in the building and lease. As to the lease, appellee had nothing involved, since appellent had transferred to him a one-half interest without cost. The building cost approximately $15,000. Of this amount, Bennett had paid $5,300 for his share in the building lease, leaving the investment of the partnership less than $10,000, or less than $5,000 for each partner. The balance of the Bennett fund, $5,226.38, or $2,613.19 each, was then being carried to the credit of the two partners in the form of undivided profits of the partnership. When it is recalled that this fund was carried as one of the assets of the partnership at the time of the $7,500 evaluation on the building made in the "buy or sell" offer, it is readily seen that the second item of the offer was based on a $15,000 total value for the building. After the transfer to undivided profits which occurred before the offer to sell for $5,000, the value of the building was reduced by the amount of the balance so transferred, $5,226.38, thereby reducing the partners' investment to less than $10,000, or less than $5,000 each.

Appellee contended that he was to receive $7,500 and that appellant claimed to be short of cash at the time of the trade. He further contended that he made demands for this balance, but appellant testified that he had no notice of any complaint from

appellee during the next five months prior to the dissolution or until suit was filed more than two years after the building and lease transfer had been consummated. Lawrence Jenkins, bookkeeper for the partnership, stated that appellee got the benefit of one-half of the Bennett fund transferred, which was admitted by appellee. William Bone testified that he had a conversation with appellee within a week after the building deal was made in which appellee said, "I have sold my one-half of the building to Lawrence (appellant) and got my money out of it." He further said appellee was smiling and seemed to be happy about the deal.

In June 1947, the partners agreed verbally to dissolve the partnership, then reduced it to a writing dated July 31, 1947, which was signed by both parties on August 8, 1947. The agreement was entitled "Final Agreement As To Dissolution Of Partnership Firm Of Oldham-Casner Dated July 31, 1947", which contained such phrases as "final condition of the Partnership at the final close of business July 31, 1947", "final distribution of the assets of the partnership", and "final settlement of the partnership". It purported to divide the property between the two parties by naming the items thereof to be received by each. No mention is made in the dissolution agreement concerning appellee's claim for $2,500 upon which he has recovered judgment. This agreement was pleaded as a bar to any recovery by appellee in the answer filed by appellant.

The Chancellor held that appellee had failed to show by clear, satisfactory, and convincing evidence that the dissolution agreement had not been entered into fairly by both parties, but we feel that he was in error in sustaining appellee's contention that the "buy or sell" offer of January 28, 1947, was still in force on February 28, 1947, when the building trade was made and that appellant owed appellee $2,500, for which judgment was rendered.

The "buy or sell" offer was, in effect, an offer in three parts to dissolve the partnership, of which the building transaction was one phase. Upon appellee's failure to raise the money to accept this offer, the parties agreed at his request to continue the partnership. This was a rejection of the "buy or sell" offer, which was extinguished by their continuance in business. The Chancellor was in error in holding that the appellee could accept a part or less than the whole of the offer without a showing that appellant consented. Restatement of the Law, Contracts, Volume I, Section 59, page 65; Hartford Life Insurance Co. v. Milet, 105 S.W. 144, 31 Ky. Law Rep. 1297; Shaw v. Ingram-Day Lumber Co., 152 Ky. 329, 153 S.W. 431, L.R.A.1915D, 145. An acceptance must correspond to the offer at every point and conclude the agreement. Howe v. Roberts, 312 Ky. 302, 227 S.W.2d 401; 17 C.J.S., Contracts, § 42, page 378.

The building transaction was made later and on a different basis. The position of the parties with respect to the disposition of the Bennett fund had changed, thus creating a change in the respective interests of each party in the Arnold lease. After the transfer of the Bennett fund to undivided profits, where each party would share equally, the value of each partner's interest was credited thereby and reduced to less than $5,000. This was the approximate figure on which the deal was actually consummated.

The building and lease transfer was only part of the transactions of the partnership, this particular phase having its inception with appellant's transfer of a one-half interest in the original lease to appellee prior to building. In this view of the question, the dissolution agreement in the absence of fraud or misrepresentation had the effect of a final settlement of all claims or obligations existing at the time thereof. The Chancellor rightly upheld this agreement.

A partnership is created and exists only by mutual agreement of the partners. Guthrie v. Foster, 256 Ky. 753, 76 S.W.2d 927. It may be dissolved by a

similar agreement. Hardy v. Myers, 206 Ky. 562, 267 S.W. 1110; Pawley v. Glasscock, 236 Ky. 821, 34 S.W.2d 729; 40 Am. Jur., Partnership, Section 235, page 292. A written memorandum of the final settlement of a partnership executed by both parties is prima facie a full settlement of all the accounts between the parties at the time. Kolb v. Dubois, 150 Ky. 92, 149 S.W. 1134. As between partners, such a settlement of their affairs effected by mutual consent is conclusive in the absence of fraud or mistake clearly established. Kane v. Hopkins, 309 Ky. 488, 218 S.W.2d 37. The fact that the building and lease were real estate does not cause it to occupy any particular status separate and apart from other partnership property. Bennett v. Bennett, 137 Ky. 17, 121 S.W. 495.

Accordingly, the judgment is reversed on the award to appellee of $2,500, and the cause is remanded with directions to enter judgment in accordance herewith.