ARCHIE WILSON, Plaintiff-Appellee, *v.* CONTINENTAL BODY CORPORATION *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 80-236

Opinion filed March 3, 1981.

Richard M. Kates, of Chicago, for appellants.

Muench & Muench, of Chicago (James J. Muench, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff Archie Wilson brought an action in four counts against Continental Body Corporation and Eldon Appling. In count I, plaintiff sought judgment for $1000, and a court order compelling Appling to transfer one-half of Appling's Continental shares to plaintiff. Counts II, III, and IV related to debt, wrongful discharge, and corporate waste. No appeal has been taken from the trial court's disposition of counts II, III, and IV.

Continental Body Corporation is an Illinois corporation engaged in the manufacture of truck bodies. In 1975, defendant Appling became president of Continental. At that time, the majority of Continental's outstanding shares were held by the estate of Stan Goodman, Continental's former president. In July 1976, Appling hired plaintiff Archie Wilson as Continental's plant manager. Continental was in a precarious financial position at that time, and plaintiff maintains that, in the course of negotiating the conditions of his employment, the parties agreed that Appling and plaintiff would each acquire 50-percent ownership of Continental's corporate stock. In August 1976, plaintiff gave Appling a check for $2000. Appling characterizes this sum as a loan, but plaintiff maintains that this transaction was part of their plan to acquire equal ownership of Continental. Appling used the $2000 to buy the 1300 Continental shares owned by the Goodman estate. Plaintiff, however, did not receive any portion of these shares; instead, the 1300 shares were placed in the name of Eldon Appling. Under the agreement by which Appling acquired the 1300 shares, Appling and Continental Body agreed to accept liability for a $30,000 note held by the National Bank of Austin. The bank

then released a mortgage on the Goodman home, and released Goodman's widow from liability on the note.

A few months later, plaintiff learned that none of the Goodman shares had been transferred to him. Plaintiff prepared an agreement, which defendant Appling signed on December 8, 1976. That agreement provided, in part:

"1. That Wilson hereby agrees to reimburse, indemnify, and hold APPLING free and harmless to the extent of one-half (½) of all sums of principal and interest paid personally by APPLING toward the loan outstanding to the NATIONAL BANK OF AUSTIN.

2. That APPLING hereby transfers, sells and assigns to WILSON, 800 of the shares presently owned by APPLING in CONTINEN-TAL BODY CORPORATION."

Plaintiff demanded 800 shares because Appling had, by this time, acquired (for $100) the 300 Continental shares owned by Jack Schuster, the brother-in-law of Goodman's widow. Eight hundred shares represented one-half of the 1600 then held by Appling. The agreement also recited that plaintiff and Appling intended to remain equal shareholders in Continental.

Appling never transferred the shares to plaintiff, and, in June 1977, he terminated plaintiff's employment with Continental. On August 4, 1977, plaintiff filed suit against Appling and Continental. Following a bench trial, plaintiff was awarded 650 shares of Continental (one-half of the 1300 purchased from the Goodman estate) and judgment for $1000 (one-half of the $2000 cost of acquiring the 1300 shares). Defendants have taken this appeal.

Before addressing the merits of defendants' appeal, we find it necessary to discuss defendants' appellate brief. Defendants' brief devotes one page to a statement of the facts, and one page to argument on the issue. While brevity is often commendable, defendants' brief is not simply short—it is incomplete. Although defendants' brief contains all of the parts prescribed in Supreme Court Rule 341(e) (82 Ill. 2d R. 341(e)), the content of those parts is sorely deficient. Defendants' argument on the issue appealed is, at best, cursory but the principal defect in defendants' brief is that defendants cite no authority. Supreme Court Rule 341(e) provides:

"The appellant's brief shall contain the following parts in the order named: (1) A summary statement, entitled 'Points and Authorities,' of the points argued and the authorities cited in the Argument. This shall consist of the headings of the points and subpoints as in the Argument, with the citation under each heading of the authorities relied upon or distinguished, and a reference to the page of the

brief on which each heading and each authority appear. Cases shall be cited as near as may be in the order of their importance." (82 Ill. 2d R. 341(e).)[1]

Defendants' brief contains the heading "POINTS AND AUTHORITIEW [*sic*]," but the section under this heading consists of a one-sentence statement that there was no consideration for any agreement by Appling to transfer stock to plaintiff.

■■■ It is clear that a reviewing court is empowered to dismiss an appeal when the appellant's presentation is so inadequate that an informed review of the issues is impossible. (See *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 232, 371 N.E.2d 294; *In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 762-63, 288 N.E.2d 520. See also *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 419, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232.) Numerous cases have held that failure to argue a point and cite relevant authorities constitutes a waiver of that issue on appeal. (See, *e.g.*, *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242, 242 N.E.2d 237 ("theories not pursued nor advanced with citation of authorities are deemed waived").) The instant appeal, however, presents the situation of appellants offering some argument on the ruling appealed, but citing absolutely no authority to support their argument. Our supreme court has said, "It is the duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion." (*Kelley v. Kelley* (1925), 317 Ill. 104, 107, 147 N.E. 659.) The reviewing court must render a decision based on the law of Illinois, and when a party fails to support his contentions by reference to authority, he contributes to the possibility that the court's decision might not be in full accord with the law of this State. (See *Kelley*, at 107.) We therefore construe Supreme Court Rule 341(e) as requiring an appellant to not only offer argument on the issue appealed, but also to support that argument with some citation of authority. However, we note that the provisions of Rule 341 are admonitory and not mandatory (see *Anderson v. Smith* (1980), 91 Ill. App. 3d 938, 940), and while the inadequacy of appellant's presentation justifies dismissal of the appeal, we elect to consider the merits.

Appellants' only assignment of error is that the trial court based its decision on an agreement that was not supported by consideration. As shown above, the agreement of December 8, 1976, contained the provisions that Appling was to transfer stock to plaintiff, and plaintiff agreed to indemnify Appling for one-half of any sums expended by Appling as surety for the $30,000 note held by the bank. Continental eventually paid the entire amount due, and Appling was never required to make payment

---

[1] Section (e)(1) of the Rule 341 was formerly numbered (e)(5).

on the note. Appling argues that, since he paid nothing to the bank, plaintiff's promise to indemnify him could not constitute consideration.

■■■ We note that the agreement reveals mutual promises by the parties, and mutual promises have long been held sufficient consideration to support a contract. (See, *e.g., Decker v. West* (1934), 273 Ill. App. 532, 544.) Plaintiff's duty to perform was conditioned upon an uncertain event, that is, upon Appling's expenditure of money as surety for the loan. Consideration is not insufficient merely because it is a conditional promise, even though the controlling event may never occur. (1 A. Corbin, Contracts §148, at 645 (1963).) Where the consideration in a contract is a party's promise to perform in the future, the consideration does not fail because of nonperformance, since the promise, and not the performance, is the real consideration. See *Vella v. Pour* (1946), 329 Ill. App. 355, 360, 68 N.E.2d 631.

■■ Defendants contend that plaintiff did not promise reimbursement of future expenditures by Appling, since the agreement reads, "all sums of principal and interest *paid* personally by APPLING." (Emphasis added.) Taking the word "paid" in the context of the entire agreement, however, it cannot be said that the language requires the interpretation that plaintiff promised to reimburse only past payments. The wording could as easily be construed to obligate reimbursement for amounts *to be paid*. The question, then, becomes one of interpretation of the contract. The trial judge, sitting as trier of fact, could have concluded that the parties intended that plaintiff reimburse future payments by Appling. This court may not substitute its own findings for those of the trial court unless the latter's are manifestly against the weight of the evidence. See *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.

Accordingly, we find that the decision below is supported by the evidence and the law, and we affirm the judgment of the trial court.

Affirmed.

HARTMAN, P. J., and PERLIN, J., concur.