**Israel COHEN, Plaintiff,**

v.

**NORTH RIDGE FARMS, INC., et al., Defendants.**

Civ. A. No. 88–318.

United States District Court,
E.D. Kentucky,
at Lexington.

March 29, 1989.

William C. Boone, Culver V. Halliday, Greenebaum, Boone, Treitz Maggiolo, Reisz & Brown, Louisville, Ky., for plaintiff.

Michael D. Meuser, Miller, Griffin & Marks, Harvie B. Wilkinson, Stoll, Keenon & Park, Lexington, Ky., for defendants.

## MEMORANDUM OPINION

WILHOIT, District Judge.

### I. INTRODUCTION

Plaintiff brings this action, pursuant to Title 28 U.S.C. § 1332, seeking to rescind the sale of a yearling bay colt by IN REALITY out of LADY B. GAY (identifed as Hip No. 151), which he purchased on July 18, 1988, at the 1988 Keeneland Select Summer Yearling Sale. This yearling was owned by defendant North Ridge Farms, Inc. ("North Ridge"), and was consigned to defendant Keeneland Association, Inc. ("Keeneland"), for the purpose of being sold at this auction. Plaintiff purchased this yearling at the auction for $575,000.00.

Plaintiff's complaint urges that this sale should be rescinded on the following grounds: Count 1—lack of consideration; Count 2—mutual mistake; Count 3—unilateral mistake; Count 4—this sale violated the Kentucky Consumer Protection Act (K.R.S. 367.110 et seq.); Count 5—misrepresentation; Count 6—fraud on the part of defendant North Ridge Farms; and Count 7—breach of fiduciary duty on the part of defendant Keeneland.

This matter is before the court on the following motions, listed in chronological order by date of filing in the record:

1. Defendant North Ridge has moved to dismiss the complaint for the following reasons: (1) Counts 1 through 5 should be dismissed because they fail to state a claim upon which relief can be granted, and (2) Counts 5 and 6 should be dismissed because they are not pled with the requisite particularity as required by FRCP 9(b).

2. Defendant Keeneland has moved to dismiss the complaint under FRCP 12 on the grounds that the complaint fails to state a claim against it for which relief can be granted.

3. Defendant Keeneland has moved to dismiss or for summary judgment.

4. Plaintiff has moved for oral argument and a hearing in open court on all pending motions.

The foregoing motions have been fully briefed, are ripe for consideration, and shall be addressed herein.

### II. OPERATIVE FACTS

#### A. THE SALE.

On July 18, 1988, plaintiff, through his agents, purchased a bay yearling colt by IN REALITY out of LADY B. GAY (hereinafter "yearling") at auction (the 1988 Keeneland Summer Select Yearling Sale) for $575,000.00. Prior to this sale, the yearling was owned by defendant North Ridge, which consigned the yearling to defendant for the purpose of sale at auction.

Although no pre-sale veterinary examination was requested or performed by plaintiff or his agents, subsequent to the sale, plaintiff, through his agent Ms. Dean Gaudet, had this yearling examined by three veterinarians. On July 19, 1988, the yearling was x-rayed and endoscopically examined by Dr. Craig Franks, with Dr. Thomas D. Brokken observing. They diagnosed a

condition known as a flaccid epiglottis, resulting in a displaced soft palate, which may or may not affect the yearling's respiratory functioning and training, which, in turn, may or may not affect the yearling's racing ability. Two other veterinarians, Dr. Merritt W. Marrs and Dr. Dewitt Owen, also examined the yearling and confirmed the original diagnosis of Drs. Franks and Brokken.

Upon learning of these diagnoses, plaintiff promptly attempted to rescind the sale of this yearling. On July 19, 1988, his agent Gaudet addressed the following handwritten note to defendant Keeneland:

I Dean Gaudet, representative for Israel Cohen wish to notify Keeneland that upon veterinary exam of the colt #151 by IN REALITY out of LADY B. GAY, there is a wind problem and therefore Mr. Cohen does not wish to pay for this colt and wishes to return him to the consignor.

By a letter dated July 20, 1988, counsel for North Ridge Farms responded to the foregoing note of Ms. Gaudet by addressing a letter to plaintiff and Ms. Gaudet, which stated, in pertinent part, as follows:

... I am in receipt of Ms. Gaudet's handwritten note of July 19, 1988, addressed to "Keeneland" wherein Ms. Gaudet purports to notify Keeneland of Mr. Cohen's desire not to pay for this colt and to return him to my client upon the grounds of a claimed "wind problem." Please be advised that under the conditions of the sale at which this colt was purchased and specifically Condition Fifth thereof, the claimed defect does not give rise to a right of rejection or revocation of acceptance. Therefore, please consider this letter a formal demand for payment in full for the colt and that you immediately take possession of him.

B. THE CONDITIONS OF SALE.

The conditions of sale governing the auction at which plaintiff purchased this yearling are set out at pages 17–22 of the catalog entitled *1988 July Selected and July Yearling Sales.* Particularly relevant to this action are the First, Fifth and Fif-

teenth Conditions of Sale, which provide, in pertinent part, as follows:

1. *First Condition:* Following the paragraph stating that the horses included in this sale are offered for sale according to K.R.S. 355.2–328(4), etc., is the concluding paragraph, in bold-face type:

**THERE IS NO WARRANTY IMPLIED BY AUCTIONEER OR CONSIGNOR, EXCEPT AS SET FORTH HEREIN, AS TO THE MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY ANIMAL OFFERED IN THIS SALE, ALL SALES ARE MADE ON AN AS IS BASIS, WITH ALL FAULTS.** (Emphasis in original).

2. *Fifth Condition:* This condition begins as follows:

**UNLESS OTHERWISE EXPRESSLY ANNOUNCED AT TIME OF SALE, THERE IS NO GUARANTEE OF ANY KIND EXPRESS OR IMPLIED AS TO THE SOUNDNESS, CONDITION, WIND OR OTHER QUALITY OF ANY ANIMAL SOLD IN THIS SALE except** ... (Emphasis in original).

This condition then provides that in certain instances where horses are sold with certain conditions without these conditions being announced at the time of sale, these horses are subject to return to the consignor with a refund of the purchase price, if the purchaser follows certain procedures within certain time frames. This condition pertains only to horses that are "cribbers" and "bleeders" and provides (1) that horses that are "cribbers" must be so announced at the time of sale, and (2) that any horse of racing age which is nerved, is a "bleeder," or is currently on the Starter's, Stewards' or Veterinarian's list must also be announced at the time of sale. Furthermore, this condition also gives the buyer a right of rejection concerning ridgelings and geldings. Additionally, this condition states in bold-face type:

**... OTHER THAN FAILURE TO SATISFY THE AFOREMENTIONED EXPRESSLY WARRANTED CONDITIONS, NO OTHER DEFECTS SHALL CONSTITUTE A SUBSTANTIAL NON-**

CONFORMITY WITH THE TERMS OF THE CONTRACT.

3. *Fifteenth Condition:* This condition states that Keeneland's obligations to both the consignor and the purchaser are limited to the ones expressly imposed by the Conditions of Sale. This condition concludes in bold-face type, as follows:

... ALL OTHER DUTIES AND OBLIGATIONS, INCLUDING FIDUCIARY AND OTHER DUTIES WHICH MIGHT OTHERWISE BE IMPOSED UPON KEENELAND BY OPERATION OF LAW, ARE HEREBY EXPRESSLY DISCLAIMED, EXCEPT THAT KEENELAND SHALL BE REQUIRED TO EXERCISE THAT STANDARD OF CARE GENERALLY EXERCISED BY OTHER COMPARABLE HORSE AUCTION COMPANIES.

## III.  THE COMPLAINT

Plaintiff's complaint advances seven claims for relief, as follows:

Count 1—*Failure of consideration.*

Plaintiff alleges that by virtue of his agreement to pay $575,000.00 for this yearling, the defendants were obligated to provide him with a thoroughbred horse that was fit for racing. Plaintiff states that due to the alleged internal defects in the yearling, it was abnormal, unsound and not fit for racing. By reason thereof, plaintiff claims that defendants have failed to provide him with consideration in exchange for the auction price of $575,000.00. Therefore, plaintiff contends that the contract for sale (1) is void *ab initio*, (2) should be rescinded and cancelled, and (3) that he is entitled to damages.

Count 2—*Mutual mistake.*

Plaintiff states that the sale contract should be rescinded because of the parties' alleged mutual mistake, *viz.*, that he intended to purchase and the defendants intended to sell a thoroughbred horse fit for racing; however, plaintiff claims that because of the alleged internal defects of this yearling it is not fit for racing; therefore, the alleged mutual mistake of the parties should operate to rescind the sale contract.

Count 3—*Unilateral mistake.*

Plaintiff claims that due to his mistaken belief that he was allegedly purchasing a thoroughbred horse fit for racing, when in fact, this yearling is allegedly not fit for racing, the sale contract should be rescinded.

Count 4—*Violation of the Kentucky Consumer Protection Act.*

Plaintiff alleges that the sale contract should be rescinded because the sale of this yearling was in violation of the Kentucky Consumer Protection Act, K.R.S. 367.110, *et seq.*

Count 5—*Misrepresentation.* (This claim is against North Ridge only).

Plaintiff claims that the sale contract should be rescinded due to the alleged reckless and intentional omission of North Ridge to inform him of the yearling's abnormality, unsoundness and internal defects.

Count 6—*Fraud.* (This claim is against North Ridge only).

Plaintiff states that due to the alleged intentional and false representation by North Ridge that the yearling was sound and free of physical abnormality, he was induced to purchase this yearling. Plaintiff claims that by reason of this alleged fraud, this sale contract should be rescinded.

Count 7—*Breach of fiduciary duty.* (This claim is against Keeneland only).

Plaintiff states that Keeneland had a fiduciary duty to ensure that its catalog and other announcements concerning this sale were as accurate and comprehensive as possible. Plaintiff claims that Keeneland breached this duty by (1) failing to inspect and to examine this yearling for internal defects prior to sale, or (2) failing to require North Ridge to inspect and to examine this yearling for internal defects prior to sale.

## IV.  THE MOTIONS TO DISMISS ALL COUNTS OF THE COMPLAINT

The defendants' motions to dismiss are similar in many respects; concerning the

counts of the complaint that apply to both of them, they advance the same or similar arguments in support of their motions to dismiss this action. Therefore, in the interests of judicial economy, regarding the counts of the complaint containing allegations against both defendants, the court will analyze and address their motions to dismiss together.

The motions of North Ridge and Keeneland to dismiss the complaint are rooted primarily in the Conditions of Sale. Essentially they contend that by reason of these Conditions of Sale, which put in place the rights and responsibilities of the parties herein, all of the claims in the complaint fail to state a claim for which relief can be granted. They rely on the fact that the aforementioned Conditions of Sale expressly disclaim all warranties, express or implied, as to the yearling's fitness for a particular purpose. More specifically, North Ridge points out that if the First Condition of Sale was insufficient to put plaintiff on notice that this yearling was being sold "as-is," the Fifth Condition disclaims any "guarantee of any kind express or implied as to the soundness, condition, wind or other quality of any animal sold in this sale ..."

Due to the express disclaimer of *any* warranty and the fact that the Conditions of Sale put plaintiff on notice that (1) this yearling was sold with no warranty, express or implied, and (2) there was no guarantee as to the "soundness, condition, wind or other quality" of the yearling, and (3) the yearling was being sold "as-is," plaintiff's claim for rescission must fail.

■ North Ridge also points out that the Conditions of Sale are a contract between the parties herein. *Keck v. Wacker*, 413 F.Supp. 1377, 1381 (E.D.Ky.1976). These Conditions of Sale plainly state that there were no warranties surrounding this yearling; it was sold "as-is." A sales contract that properly excludes all warranties is enforceable. *Greg Coats Cars, Inc. v. Kasey*, 576 S.W.2d 251, 252 (Ky.App. 178). Therefore, North Ridge submits that as a matter of law, any and all warranties, including guarantees of merchantability and fitness

for a particular purpose, as well as to soundness and wind, were effectively disclaimed by the conspicuous language in the Conditions of Sale. *See Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343 (Ky. 1970), and *Cline v. Allis–Chalmers Corp.*, 690 S.W.2d 764, 768 (Ky.App.1985).

In conjunction with the Conditions of Sale, Keeneland reminds the court that the Uniform Commercial Code also controls this sales transaction. Keeneland submits that especially critical to a correct analysis of this action is an understanding of the import of K.R.S. 355.1–103, which provides:

> *Unless displaced by the particular provisions of this chapter*, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause *shall supplement* its provisions. (Emphasis supplied).

Keeneland does not contend that legal and equitable principles such as mistake, lack of consideration and fraud are never applicable in a UCC transaction. However, Keeneland does submit where an express provision of the UCC addresses an issue, the express Code provision controls rather than legal and equitable principles.

More specifically, the defendants argue in greater detail why each count of the complaint should be dismissed, as follows:

*Count 1—Lack of consideration.*

■ The defendants assert that by the foregoing Conditions of Sale and K.R.S. 355.2–316(3)(d), plaintiff's claim that this sale contract should be rescinded due to a lack or failure of consideration is unfounded. In support thereof, the defendants note that the First and Fifth Condition of Sale expressly disclaimed any warranty, thereby putting plaintiff on notice that any risk of loss was being passed to the prospective purchaser.

Additionally, North Ridge relies on K.R.S. 355.2–316, which addresses the exclusion or modification of warranties. As it pertains to this action, K.R.S. 355.2–316(2)

states that to exclude or modify the implied warranty of merchantability and the warranty for fitness for a particular purpose, the exclusion must be by a writing and conspicuous. More specifically, K.R.S. 355.2–316(3) goes on to state, as follows:

(3) Notwithstanding subsection (2)

. . . . .

(d) with respect to the sale of bovine, porcine, ovine and equine animals, or poultry there shall be no implied warranty that the animals are free from disease or sickness. This exemption shall not apply when the seller knowingly sells animals which are diseased or sick.

Consequently, the defendants argue that by reason of the Conditions of Sale and K.R.S. 355.2–316 plaintiff cannot be heard to say that there was a failure of consideration. The circumstances surrounding this sale indicate that plaintiff agreed to purchase this yearling "as-is" for $575,000; and this yearling "as-is" is exactly what plaintiff received. In exchange for his high bid of $575,000, plaintiff received exactly what he bargained for, no more and no less. North Ridge submits that the only way this sale contract could be rescinded for failure of consideration would be in the event plaintiff received nothing. However, defendants argue that because plaintiff placed the highest bid on this live yearling and received this same live yearling, there was no failure of consideration.

In plaintiff's response thereto, he argues that there was a failure of consideration because the horse cannot fulfill the sole purpose for which it was purchased. Obviously, plaintiff is arguing warranty, and since all warranties were disclaimed, his argument is without merit. The only way there could be a failure of consideration would be if plaintiff had received (1) nothing, (2) a dead yearling, or (3) a live yearling different from the one on which he bid. None of these contingencies are present herein.

Plaintiff's reliance on *Myers v. Land,* 314 Ky. 514, 235 S.W.2d 988 (1951), a pre-Uniform Commercial Code case, is misplaced. Plaintiff confuses the purchase of a horse with the purchase of a machine which failed to properly manufacture concrete blocks, again harking back to his argument concerning warranty of fitness for a particular purpose.

Therefore, the court finds merit in the defendants' position and concludes that plaintiff's claim for rescission due to failure of consideration must be dismissed.

*Count 2—Mutual mistake.*

■ North Ridge disposes of plaintiff's allegation concerning the alleged mutual intent and mistake of the parties by pointing to the Conditions of Sale. Regardless of the fact that plaintiff may have intended to purchase a horse that was fit for racing, the Conditions of Sale expressly disclaim any fitness for racing and any soundness of wind.

As North Ridge points out, the clear and unambiguous terms of the Conditions of Sale operated to "shift the burden of responsibility for any fortuitous conditions which might arise upon the bidder." *United States v. Hathaway,* 242 F.2d 897, 900 (9th Cir.1957), which states as follows:

... Mutual mistake renders a sales contract voidable only if the parties have not agreed among themselves that the risk of such mistake shall be assumed by the purchaser. It cannot be doubted that the parties can control the matter by agreement. A party to a contract may assume the risk of every chance occurrence.

*Id.* at 899.

In *Hathaway, supra,* property was sold "as-is," and warranties and representations, express or implied, were expressly disclaimed. In holding that the bidder therein had assumed the risk of loss in the sale contract, the *Hathaway* court relied in part on the *Restatement of Contracts,* § 288, Comment b., which provides:

Since it is possible for a party to a contract to assume the risk of every chance occurrence, a fair interpretation of a contract may indicate an intention to be bound to perform or to pay damages for nonperformance whatever contingencies may occur.

Additionally, Keeneland asserts that plaintiff's claim of mutual mistake should be dismissed for failure to state a claim for which relief can be granted. In support thereof, Keeneland relies on *Fernandez v. Western Railroad Builders, Inc.*, 112 Idaho 907, 736 P.2d 1361 (App.1987), a case where a disgruntled buyer of four items of railroad maintenance equipment sought to rescind the sales contract on the grounds of mutual mistake of fact concerning the capabilities of two of these machines. The *Fernandez* court rejected the buyer's argument, as follows:

> Function-limiting defects in a product do not alter the fact that the parties specifically identified the subject matter of their bargain. Indeed, if such defects were deemed to change the identity of the subject matter of a contract, then "mistake" would preempt virtually the entire body of law—including the UCC—dealing with nonconforming goods. This would be contrary to common sense. It would also be inconsistent with the declaration in the UCC, noted earlier, that general principles of equity "supplement" the Code. Accordingly, we hold that there was no "mistake" giving rise to an equitable remedy of rescission in this case.

*Id.* at 1363–64.

Plaintiff's reliance on the pre-UCC cases, *Fields v. Cornett*, 254 Ky. 35, 70 S.W.2d 954 (1934); *McGeorge v. White*, 295 Ky. 367, 174 S.W.2d 532 (1943); and *Kane v. Hopkins*, 309 Ky. 488, 218 S.W.2d 37 (1949), is misplaced.

Therefore, plaintiff's claim for rescission based on mutual mistake must be dismissed.

*Count 3—Unilateral mistake.*

■ Concerning plaintiff's alleged unilateral mistake, North Ridge asserts that if a "mistake" occurred in the sale of this yearling, is was plaintiff's mistake *only*, and his alleged unilateral mistake provides no basis for rescission because he had assumed the risk of loss. *See Restatement (Second) of Contracts*, §§ 153, 154. North Ridge further argues that even assuming *arguendo* that plaintiff did not agree to assume the risk of loss surrounding this yearling, he purchased same with a full awareness that his knowledge as to the claimed defect was limited, which still places the risk of loss on him. *Id.* § 154.

The defendants' positions are well-founded. Plaintiff's claim for rescission based on unilateral mistake will be dismissed.

*Count 4—Violation of the Kentucky Consumer Protection Act.*

■ The defendants contend that plaintiff has no standing to bring this claim under K.R.S. 367.110, *et seq.*, because this statute only provides for a private cause of action by "any person who purchases or leases goods or services primarily for personal, family or household purposes ..." K.R.S. 367.220. The crux of the defendants' argument is that since this statute (K.R.S. 367.220) provides a private right of action surrounding the purchase of *consumer goods*, because a thoroughbred horse is not a consumer good, plaintiff has no standing to assert this cause of action under K.R.S. 367.110. The defendants submit that although it appears that the Kentucky Attorney General would have broad powers to bring this action, plaintiff has no standing because this case does not concern consumer goods. *See, e.g., Commonwealth Ex rel. Stephens v. North American Van Lines, Inc.*, 600 S.W.2d 459 (Ky. App.1979).

In response to this motion, plaintiff argues that the Conditions of Sale are unconscionable and that public policy considerations should operate to allow rescission of this contract. For reasons that the court cannot fathom, plaintiff also relies on *Chernick v. Fasig–Tipton Kentucky, Inc.*, 703 S.W.2d 885 (Ky.App.1986), and *Mizan Arabians v. Pyramid Society*, 821 F.2d 357 (6th Cir.1987), two cases which are totally inapposite to the present action.

Plaintiff also rests his argument for rescission on *Travis v. Washington Breeders Association, Inc.*, 111 Wash.2d 396, 759 P.2d 418 (1988), wherein the buyer of a horse purchased at the Washington Horse Breeders Annual Summer Yearling Sale was allowed to rescind the sale contract

because subsequent to the sale, he discovered the horse had a heart murmur. At trial, the jury found that the auctioneer and owner had violated the Washington Consumer Protection Act, which provided a private cause of action for this buyer. However, because Kentucky's Consumer Protection Act only provides for a private cause of action for consumer goods, *Travis* is of no help to plaintiff.

Therefore, it is clear that plaintiff has no cause of action under Kentucky's Consumer Protection Act. This claim must be dismissed.

*Count 5—Misrepresentation by North Ridge.*

■ North Ridge submits that this claim should also be dismissed because North Ridge was under no duty to discover and disclose an unwarranted, unknown condition. *Restatement (Second) Torts,* § 551(1). North Ridge argues that because it had no duty to plaintiff, it therefore has no liability to him for any alleged harm. *See id.* Comment a; *Hall v. Carter,* 324 S.W.2d 410 (Ky.1959); and *Johnson v. Cormney,* 596 S.W.2d 23 (Ky.App.1979).

The gist of plaintiff's claim for misrepresentation is that because North Ridge omitted to inspect, discover and disclose this alleged defect in the yearling, the sale contract should be rescinded.

Plaintiff seems to forget that North Ridge was under no duty to him or any other prospective purchaser to inspect, discover and disclose any defects in this yearling. Plaintiff was put on notice by the Conditions of Sale that (1) this yearling was being sold "as-is," with no warranties, and (2) he assumed the risk of loss.

Plaintiff's claim for misrepresentation might be proper if this horse had been a two-year-old, where there are generally more guarantees and warranties, especially as to wind. However, it seems that plaintiff, a man experienced in the horse business, has lost sight of the fact that he purchased a yearling, with no warranties, express or implied. Therefore, his claim for misrepresentation must be dismissed.

*Count 6—Fraud by North Ridge.*

North Ridge advances essentially the same argument as in Count 5 that the fraud claim should also be dismissed. North Ridge notes that in looking simultaneously at the misrepresentation and fraud claims, they take on a new twist: somehow plaintiff claims that the same "fact" that was *omitted,* which is the basis for the misrepresentation claim, was also *represented,* which seems to be the basis for the fraud claim.

In sum, reading Counts 5 and 6 together, it appears that plaintiff is alleging that the same fact was represented and not represented by the same party (North Ridge) at the same time. In light of the controlling Conditions of Sale, the court is of the opinion that both Counts 5 and 6 fail to state a claim for which relief can be granted and must be dismissed.

*Count 7—Breach of fiduciary duty by Keeneland.*

Keeneland contends that this count fails to state a claim for which relief can be granted. Plaintiff seems to base this claim on *Chernick v. Fasig–Tipton Kentucky, Inc.,* 703 S.W.2d 885 (Ky.App.1986); however, the court is of the opinion that *Chernick* is factually distinguishable from and not relevant to this action.

*Chernick* concerned a situation where a mare's breeding history and status were inaccurately described in the sales catalog of horses sold in the Fasig–Tipton Breeding Stock Sale. The catalog inaccurately described the mare as "believed in foal." The consignors of this mare disclosed to Fasig–Tipton that the mare had spontaneously aborted or "slipped" a single foal within the year prior to the sale; however, the consignors failed to disclose to Fasig–Tipton that this mare also slipped twin foals within the year prior to sale. After the catalogs were printed, but prior to the sale, Fasig–Tipton learned that this mare was actually not in foal. Fasig–Tipton acted to correct this error in its catalog, as noted by the *Chernick* court, as follows:

... Realizing the high degree of reliance placed by a purchaser upon Fasig–Tipton's sale catalog which listed the mare

as "believed in foal," the sale announcers made three references to the fact, while the mare was in the ring, that Fiddler's Colleen was "not in foal," that "she is barren."

*Id.* at 887.

The purchaser of FIDDLER'S COLLEEN soon learned that this mare was not fit for breeding purposes and sought to rescind the sale contract. The *Chernick* court affirmed the trial court's finding that the consignors had "deliberately and consciously suppressed" the mare's condition in trying "to unload this horse on an unsuspecting buyer." *Id.* at 889. Concerning the duties of the consignors and Fasig–Tipton, the *Chernick* court concurred with the trial court, as follows:

> ... However, the trial court found, and we concur, that although under the terms of the consignment contract the Chernicks were responsible for the accuracy of all information contained within the catalog of sale, Fasig–Tipton had a fiduciary duty to the purchaser and to the Commonwealth's most prestigious and valued industry to use ordinary care to ensure that its catalog and/or announcements were as accurate and comprehensive as possible.

*Id.* at 889–890. The *Chernick* court held that Fasig–Tipton breached its duty of ordinary care in two ways: (1) it relied upon information from the Jockey Club of America, which it had reason to know might not be accurate, and (2) the questionnaire incorporated with Fasig–Tipton's standardized veterinarian certificate failed to ask for information that would convey a mare's complete produce record, which would be of vital importance to any prospective purchaser. Even though *Chernick* held that Fasig–Tipton was negligent, in light of the fact that the buyer did not assert a claim for compensatory damages against Fasig–Tipton, the *Chernick* court also held that Fasig–Tipton was not liable to the buyer.

■ *Chernick* is important in that it emphasizes the fact that a horse auction company is required to use ordinary care to ensure that the information contained in its catalog is "as accurate and comprehensive as possible." *Id.* at 890. This is where Keeneland's duty begins and ends. Based on *Chernick*, Keeneland only had a duty to ascertain that the information contained in its sales catalog and any announcements about this yearling were accurate and comprehensive. It appears to the court that this catalog information concerning this bay colt (Hip No. 151) is completely accurate. The court is at a loss to see how this information is inaccurate. Obviously, *Chernick's* requirement of complete disclosure of a mare's breeding history and produce record is not applicable to this colt.

■ Therefore, the court is of the opinion that plaintiff's claim that Keeneland breached its fiduciary duty by (1) failing to inspect and to examine this yearling for internal defects prior to sale and (2) failing to require North Ridge to inspect and to examine this yearling for internal defects prior to sale misses the mark. It seems that plaintiff attempts to impose a duty on Keeneland where none presently exists.

Once more, plaintiff has forgotten the terms of the Conditions of Sale, which expressly disclaimed any and all warranties, especially "soundness, condition, wind or other quality ..." (Fifth Condition of Sale). Accordingly, plaintiff's claim against Keeneland for breach of fiduciary duty must be dismissed.

## V. KEENELAND'S MOTION FOR SUMMARY JUDGMENT

On the heels of discovery, Keeneland filed a second motion to dismiss this action, pursuant to FRCP 12; Keeneland also requests that this motion be treated as one for summary judgment, pursuant to FRCP 56. This motion has also been fully briefed and is ripe for consideration.

■ Although Keeneland stands firm on its position that this action should be dismissed under FRCP 12, Keeneland submits that discovery has conclusively shown that this action may also be dismissed on summary judgment under FRCP 56. The basis of this motion may be briefly summarized, as follows:

Discovery revealed that plaintiff, who did not actively participate in the bidding at the sale, assembled a team of three experts to represent his interests at this sale. His three agents were (1) Mr. Mike O'Farrell, an experienced horseman who had been active in the horse industry for over seventeen years and the general manager of a large thoroughbred breeding farm and training facility in Ocala, Florida; (2) Ms. Dean Gaudet, a trainer of thoroughbred horses who has been active in the industry for more than twenty years and has attended horse sales during a majority of this time; and (3) Dr. Tom Brokken, a licensed veterinarian who has specialized in equine medicine since his graduation from veterinary school in 1969. This same team has previously represented plaintiff at several thoroughbred sales, specifically the 1987 and 1988 Keeneland Select Yearling Summer Sales.

Plaintiff's team visually inspected many of the horses offered for sale in the subject sale and arrived at a short list of yearlings on which they intended to bid. It is uncontroverted that Dr. Brokken recommended that each yearling on their list be given an endoscopic throat examination prior to the sale and that there was sufficient time to perform these examinations.

It is also uncontroverted that no one asked North Ridge for permission to endoscopically examine this yearling prior to the sale. Plaintiff alleges that his agents did not make this request of North Ridge because they were of the opinion that North Ridge did not allow endoscopic examinations to be performed on its horses prior to sale. North Ridge asserts that it considers such requests on a case-by-case basis. However, whether North Ridge would or would not have allowed a pre-sale endoscopic examination of this yearling is irrelevant because plaintiff's agents did not request same, even though (1) Dr. Brokken recommended that this procedure be performed and (2) there was plenty of time to perform this examination prior to the sale.

Therefore, these uncontroverted facts show that plaintiff assumed the risk of loss in two ways: (1) the Conditions of Sale expressly disclaimed all warranties and guarantees as to soundness and wind, and (2) plaintiff acted with "conscious ignorance" in electing to purchase this yearling in that he made the decision to purchase without even requesting a pre-sale endoscopic examination of this yearling, even though there was ample time to do so.

In light of these facts, the court can only conclude that there is no genuine issue of material fact and summary judgment for the defendants is proper. The test for summary judgment under FRCP 56 is, as follows:

> ... In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Furthermore, where a claim for fraud is present, a party opposing a motion for summary judgment has an even greater burden of proof (by "clear and convincing evidence") to overcome a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In short, the court is of the opinion that discovery has shown that there is no genuine issue of material fact and has confirmed the fact that each count of plaintiff's complaint fails to state a claim for which relief can be granted. The motion for summary judgment in favor of the defendants will be sustained.

## VI. PLAINTIFF'S MOTION FOR ORAL ARGUMENT AND A HEARING ON THE MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

Although the defendants voice no actual objection to this motion, they point out that all parties hereto previously stipulated that upon the filing of certain response and reply memoranda, this matter would stand submitted for a decision based on the

record. The Order to this effect was entered on December 9, 1988.

Therefore, it seems that plaintiff's motion flies in the face of their Stipulation and Agreed Order. Moreover, the court is of the opinion that a hearing in open court would shed no new light on this action. Therefore, this motion will be overruled.