**MAN ROLAND INC., Plaintiff,**

v.

**QUANTUM COLOR CORP., Defendant.**

**No. 98 C 7753.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 15, 1999.

David G. Lynch, Norman Mitchell Leon, Kim Matsunaga, Rudnick & Wolfe, Chicago, IL, for plaintiff.

David S. Ruskin, James A. Marino, Law Offices of David S. Ruskin, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is plaintiff MAN Roland Incorporated's motion to strike defendant Quantum Color Corporation's amended affirmative defenses. For the following reasons, the court denies in part and grants in part plaintiff MAN Roland Incorporated's motion to strike Quantum Color Corporation's amended affirmative defenses.

## I. BACKGROUND

For the sake of brevity, the court will not restate the facts. The facts may be found in *MAN Roland Inc. v. Quantum Color Corporation,* 57 F.Supp.2d 568 (N.D.Ill.1999). Any additional facts, the court will discuss in further detail under the appropriate affirmative defense.

In this motion, MAN Roland Incorporated (MAN Roland) argues that all seven of Quantum Color Corporation's ("Quantum") amended affirmative defenses are insufficient. Thus, the court should strike these amended affirmative defenses.

## II. DISCUSSION

### A. *Standard of review for motions to strike affirmative defenses*

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense." FED.R.CIV.P. 12(f). Nevertheless, motions to strike are generally disfavored. *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989); *Codest Eng'g v. Hyatt Int'l Corp.,* 954 F.Supp. 1224, 1228 (N.D.Ill.1996). Thus, these motions will be granted only if the affirmative defenses are insufficient as a matter of law or present no questions of law or fact. *Heller,* 883 F.2d at 1294 (citing *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir.1975)).

██ Affirmative defenses are pleadings and, therefore, are subject to all of the pleading requirements of the Federal Rules of Civil Procedure. *Id.* (citing *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736–37 (N.D.Ill.1982)). Accordingly, affirmative defenses must set forth a "short and plain statement." FED.R.CIV.P. 8(a). Furthermore, the affirmative defenses must fulfill the Federal Rule of Civil Procedure 12(b)(6) standard. *Codest,* 954 F.Supp. at 1228 (citing *Bobbitt,* 532 F.Supp. at 737).

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations as true and draw all reasonable inferences in favor of the pleader. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). If, when viewed in the light most favorable to the pleader, the allegation fails to state a claim upon which relief can be granted, the court must dismiss it. *See* FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the allegation only if it appears beyond a doubt that the pleader can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

██ Even under the liberal notice pleading standard of the Federal Rules of Civil Procedure, however, an allegation must include either direct or inferential allegations respecting all material elements of the claim asserted. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). Bare legal conclusions attached to narrated facts will not suffice. *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985).

## B. *Applicable law*

In analyzing these defenses, the court will apply Illinois law because the contract specifically states that the parties entered into this contract in Illinois and that Illinois law shall govern the contract. (Pl. Compl.Ex.1.) Under Illinois law, Article II of the Uniform Commercial Code ("UCC") applies to transactions in goods. 810 ILL. COMP.STAT. 5/2–102. However, "[u]nless displaced by the particular provisions of this Act [the UCC], principles of law and equity, including the law merchant and the law relative to ... fraud, misrepresentation, ... mistake ... or other validating or invalidating cause shall supplement" the UCC's provisions. *Id.* 5/1–103. Thus, where the UCC is silent on the issue, this court will rely upon common law cases.

## C. *First and second amended affirmative defenses—Mistake*

In its first and second amended affirmative defenses, Quantum, respectively, alleges that either both it and MAN Roland were mistaken or just it was mistaken about certain material facts which formed the bases to their contract. Quantum claims that these alleged mistakes constitute a defense to MAN Roland's claims. However, MAN Roland argues that both the first and second amended affirmative defenses fail because (1) there were no mistakes which are material to the subject matter of the contract and (2) even if there were any mistakes, the contract allocates the risk to Quantum.

### 1. *Materiality of the mistake*

MAN Roland first alleges that a mistake as to the quality of the press is not material to the contract's subject matter. Thus, it is not the type of mistake which would excuse Quantum from performance under the contract.

██ There are two types of mistakes. The first type is "fundamental in character" and relates to an essential element of the contract. *Harley v. Magnolia Petroleum Co.,* 378 Ill. 19, 37 N.E.2d 760, 765 (1941). "These generally have to do with ... the existence and identity of the subject matter [and] errors as to price [and] quantity," and thus, are grounds for recision. *Id.* The other type of mistake occurs when, through some error, the agreement

reduced to writing is not actually the agreement which the parties or one of the parties understood it to be. *Id.* This type of mistake is only grounds for reformation of the contract and not recission. *Id.* Furthermore, for a mistake to be actionable, the parties must not have known of the mistake or consciously ignored the facts at the time of contract formation. *See Bentley v. Slavik,* 663 F.Supp. 736, 741–42 (S.D.Ill.1987); *Harley,* 37 N.E.2d at 765–66.

■ In this case, Quantum is seeking recission of the contract based upon mutual or unilateral mistake. Thus, the mistake must relate back to an essential element of the contract. *See Harley,* 37 N.E.2d at 765. MAN Roland's entire argument that there was no mistake rests upon a Court of Appeals of Idaho case which involves the purchase of two machines that did not perform certain functions. *Fernandez v. Western R.R. Builders, Inc.,* 112 Idaho 907, 736 P.2d 1361, 1362 (Id.App.Ct.1987). The court found that functional defects do not change the subject matter of the contract because if "defects were deemed to change the subject matter of a contract, then 'mistake' would preempt the entire body of law—including the UCC—dealing with nonconforming goods.... [Furthermore,] [i]t also would be inconsistent with the declaration in the UCC ... that general principles of equity 'supplement' the Code."[1] *Id.* at 1363–64; *see also Cohen v. North Ridge Farms, Inc.,* 712 F.Supp. 1265, 1270 (E.D.Ky.1989) (quoting the reasoning of *Fernandez* as one of the bases for dismissing a claim for recission based on mutual mistake).

After its own research, this court could find no similar cases in which an Illinois court or a federal court applying Illinois law addressed whether functional defects of any machinery changed the subject matter of the contract. However, there is an analogous Illinois case which addresses the effect of a dysfunctional septic tank on a contract for the sale of a house. *Diedrich v. Northern Ill. Publ'g Co.,* 39 Ill.App.3d 851, 350 N.E.2d 857, 861 (1976). In *Diedrich,* the Illinois Appellate Court found that, where there was no claim of fraud or misrepresentation and the claim of mistake only went to the value of the transaction, a party could not claim mistake as a ground for recission. *Id.* at 862–64.

In this case, Quantum's allegation that the press does not perform to the standards that it expected goes to the quality and the value of the press. Quantum has made no claim that the press does not perform at all; only that the press does not produce in a commercially acceptable manner. (D. First Am. Answer ¶¶ 49–51, 66–67.) Based on these facts, the mistakes which Quantum alleges do not relate to an essential element of the contract; they are merely collateral mistakes.

Because the mistakes were collateral to the contract, it would not be inconsistent for the court to strike Quantum's first and second affirmative defenses. However, Quantum has also alleged that it was induced into making the contract due to misrepresentations made by MAN Roland. Thus, the court will not strike Quantum's first and second amended affirmative defenses based on MAN Roland's claim that there were no mistakes material to the contract.[2]

### 2. Allocation of risk

■ MAN Roland also alleges that the court should strike Quantum's first and second amended affirmative defenses because the contract allocates the risk to Quantum. Quantum, on the other hand,

---

1. Quantum does not address this case or even this basis; it makes no argument whatsoever that a mistake as to the quality of goods produced by the press relates to the fundamental subject matter of the contract.

2. MAN Roland has failed to object to Quantum's pleading of misrepresentation as a basis for the mistake; thus, the court will assume Quantum plead it in accordance with the appropriate standard.

alleges that the contract did not allocate the risk to it because the "as is" provision is inoperative.[3] However, as explained in this court's previous opinion on MAN Roland's motion to dismiss Quantum's counterclaims, the "as is" provision of the contract is operative. *See MAN Roland,* 57 F.Supp.2d 568, 571–73.

MAN Roland primarily relies upon a decision by the United States District Court for the Eastern District of Kentucky ("Eastern District of Kentucky") for the proposition that the "as is" provision shifts the risk to Quantum. *Cohen,* 712 F.Supp. at 1270–71. In *Cohen,* the conditions of sale stated that there is no implied warranty of merchantability or fitness and "all sales are made on an as is basis." *Id.* at 1267. Based upon this provision, the Eastern District of Kentucky found that "the clear and unambiguous terms of the Conditions of Sale operated to 'shift the burden of responsibility for any fortuitous conditions which might arise upon the bidder.' " *Id.* at 1270 (quoting *United States v. Hathaway,* 242 F.2d 897, 900 (9th Cir.1957)). Thus, the Eastern District of Kentucky dismissed the plaintiff's claim for recission based on mutual mistake. *Id.* at 1271.

MAN Roland does not cite, nor could this court find, any cases decided by an Illinois court or by a federal court interpreting Illinois law which support this proposition. However, aside from the Eastern District of Kentucky, the Ninth Circuit and the Supreme Court of Michigan also have found that recission is not available to a purchaser who has assumed the risk. *See Hathaway,* 242 F.2d at 899 ("Mutual mistake renders a sales contract voidable only if the parties have not agreed among themselves that the risk of such mistake shall be assumed by the purchaser.... A party to a contract may assume the risk of every chance occur-

rence."); *Lenawee County Bd. of Health v. Messerly,* 417 Mich. 17, 331 N.W.2d 203, 209–10 (1982) ("Recission is not available, however, to relieve a party who has assumed the risk of loss in connection with the mistake."). Similarly, sections 152 and 154 of the Restatement (Second) of Contracts provide additional support for MAN Roland's contention. RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1981) ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake."); *id.* § 154 ("A party bears the risk of mistake when ... the risk is allocated to him by agreement of the parties.").

The contract in this case, similar to the condition of sale in *Cohen,* disclaims all warranties. The provision states: "ALL WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS, IMPLIED AND STATUTORY, ARE HEREBY DISCLAIMED. ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED. THE MACHINERY (INCLUDING ANY ACCESSORIES AND COMPONENTS) IS SOLD 'AS IS.' " (P.Compl.Ex. 1 ¶ 11). This language clearly communicates that all warranties are excluded and shifts any risk of loss to the purchaser, Quantum. Because this court has previously found this provision to be operative and this provision allocates the risk of loss to Quantum, Quantum's affirmative defenses of mutual mistake and unilateral mistake fail to state a claim.

Although the court did not strike Quantum's first and second amended affirmative defenses based on MAN Roland's

---

3. This is the essence of Quantum's "as is" argument. Quantum did not specifically address the argument made by MAN Roland. It simply cut and pasted the breach of contract and breach of express and implied warranties

responses made in its "Reply Memorandum in Opposition to Plaintiff's Motion to Strike Defendant's First Amended Counterclaims." Thus, Quantum's entire argument on the "as is" provision is not applicable.

claim that there were no mistakes material to the contract, the court has found that both of these affirmative defenses fail to state a claim because Quantum assumed the risk of loss. Accordingly, the court grants MAN Roland's motion to strike Quantum's first and second amended affirmative defenses.

### D. Third and fourth amended affirmative defenses—Breach of contract

Quantum alleges in both its third and fourth amended affirmative defenses that MAN Roland breached the contract. Thus, Quantum is asking this court to rescind the contract based on MAN Roland's failure to deliver the "standard equipment" and failure to "install" the equipment. These two amended affirmative defenses are substantively the same as Quantum's first and second amended counterclaims. Thus, for the reasons stated in Part II.B. of the court's previous opinion in this case, Quantum's affirmative defenses for breach of contract state a claim. *MAN Roland,* 57 F.Supp.2d 570–71. Accordingly, the court denies MAN Roland's motion to strike Quantum's third and fourth amended affirmative defenses.

### E. Fifth amended affirmative defense—Lack of consideration

Quantum styles its fifth amended affirmative defense as an allegation of a lack of consideration. Although, in reality, Quantum is alleging a failure of consideration because MAN Roland failed to perform certain conditions of the agreement. Thus, this court will treat Quantum's fifth amended affirmative defense as a failure of consideration and not a lack of consideration.

■■ Consideration is a bargained-for exchange of promises or performances which is of benefit to one party or detriment to the other party. *Serpe v.*

*Williams,* 776 F.Supp. 1285, 1288 (N.D.Ill. 1991); *McInerney v. Charter Golf, Inc.,* 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347, 1350 (1997). Accordingly, "mutual promises have long been held sufficient consideration to support a contract ... [and] the consideration does not fail because of non-performance, since the promise, and not the performance, is the real consideration." *Wilson v. Continental Body Corp.,* 93 Ill.App.3d 966, 49 Ill.Dec. 412, 418 N.E.2d 56, 59 (1981); *see also Crum v. Krol,* 99 Ill.App.3d 651, 54 Ill.Dec. 864, 425 N.E.2d 1081, 1086 (1981) ("As a general rule of contract law, if the consideration is a promise to perform in the future, a party's non[-]performance does not cause consideration to fail, the real consideration is the promise to perform."). However, if the consideration does fail, there is no contract. *Serpe,* 776 F.Supp. at 1288. Thus, a court's determination that there is a failure of consideration is an extraordinary remedy. *Finke v. Woodard,* 122 Ill.App.3d 911, 78 Ill.Dec. 297, 462 N.E.2d 13, 16 (1984).

■ In this case, the real consideration was the promise by MAN Roland to sell to Quantum the press and Quantum's promise to buy the press from MAN Roland.[4] *See Wilson,* 49 Ill.Dec. 412, 418 N.E.2d at 59. The consideration was not the performance of certain conditions. Thus, MAN Roland's failure to perform the conditions of the agreement, did not result in the failure of the consideration. Accordingly, the court grants MAN Roland's motion to strike Quantum's fifth amended affirmative defense.

### F. Sixth amended affirmative defense—Fraudulent misrepresentation

In its sixth amended affirmative defense, Quantum alleges that MAN Roland fraudulently misrepresented certain material

---

4. Quantum in its response brief entitled "Reply Memorandum" does not dispute that this was the consideration. In fact, Quantum makes no response whatsoever to MAN Roland's motion to strike this affirmative defense.

facts to induce Quantum into the contract. MAN Roland, however, contends that this affirmative defense fails because Quantum has failed to satisfy the requirements of a defense based upon fraud. More specifically, MAN Roland alleges that Quantum has failed (1) to allege that the representation was a statement of material fact and (2) to prove, "by clear and convincing evidence," that its reliance on any alleged misrepresentations was reasonable as a matter of law. (P.Mot. at 5.)

■■ To assert a defense of fraudulent misrepresentation under Illinois law, Quantum must allege the following: (1) the representation was a statement of material fact, rather than a mere promise or opinion; (2) the statement was false; (3) the person making the statement knew or believed that the representation was false; (4) the person to whom the representation was made reasonably relied on the truth of the statement; (5) the statement was made for the purpose of causing the other party affirmatively to act; and (6) the reliance by the person to whom the statement was made led to his injury. *LaScola v. U.S. Sprint Communications,* 946 F.2d 559, 567–68 (7th Cir.1991). "Mere allegations of fraud are not enough. Rather, pleadings must state the 'specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Mutual Life Ins. Co. v. Veselik,* No. 97 C 6291, 1998 WL 30672, at *3 (N.D.Ill. Jan.23, 1998) (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992–93 (7th Cir.1991)).

In its amended affirmative defense, Quantum alleges that MAN Roland personnel represented that the press "produced and could produce commercially acceptable two color process work in a commercially acceptable manner ... and in accordance with [Quantum's] subjective operation, reliability and quality requirements," "was maintained and serviced in accordance with its current design specifications," and "was operating and could operate in accordance with its design

specifications (i.e. 10,000 impressions per hour, etc.) and design and accepted mean time between service call specifications." (D. First Am. Answer ¶¶ 99–102.) Quantum also alleges that MAN Roland personnel knew these statements were false and fraudulent and made these misrepresentations to induce Quantum into the contract. (*Id.* ¶¶ 99–103.) Furthermore, Quantum alleges that it believed these statements to be true and reasonably relied upon these statements. (*Id.* ¶¶ 104–05.)

### 1. *Statements of material fact*

■■■ MAN Roland contends that the alleged misrepresentations were not statements of material fact, but were merely promises or expressions of opinion. "To support an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion." *People ex rel. Peters v. Murphy–Knight,* 248 Ill.App.3d 382, 187 Ill.Dec. 868, 618 N.E.2d 459, 463 (1993) (citing *Equity Capital Corp. v. Kreider Transp. Serv., Inc.,* 967 F.2d 249, 253–54 (7th Cir.1992); *Duhl v. Nash Realty, Inc.,* 102 Ill.App.3d 483, 57 Ill.Dec. 904, 429 N.E.2d 1267, 1274 (1981)). "A statement that merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable representation." *West v. Western Cas. & Sur. Co.,* 846 F.2d 387, 393 (7th Cir.1988). Thus, the misrepresentation "must be an affirmance of fact and not a mere promise or expression of opinion or intention; or in other words 'the fraud must be in the original contract or transaction, and not in its nonfulfillment.'" *Zaborowski v. Hoffman Rosner Corp.,* 43 Ill.App.3d 21, 1 Ill.Dec. 465, 356 N.E.2d 653, 655 (1979) (quoting *Luttrell v. Wyatt,* 305 Ill. 274, 137 N.E. 95, 97 (1922)). Furthermore, statements that are "nothing more than a recommendation of one's product are not representations of fact, but rather [are] 'mere commendation or opinion' and are not actionable as fraud," *Murphy–Knight,* 187

Ill.Dec. 868, 618 N.E.2d at 464 (quoting *Spiegel v. Sharp Elec. Corp.*, 125 Ill.App.3d 897, 81 Ill.Dec. 238, 466 N.E.2d 1040, 1044 (1984)).

In *Lefebvre Intergraphics, Inc. v. Sanden Machine Ltd.*, 946 F.Supp. 1358, 1364–66 (N.D.Ill.1996), this court outlined a continuum for whether a statement is a material fact or a mere opinion. The facts of this present case fall somewhere on this continuum. On one end of the continuum is *Murphy–Knight.* In *Murphy–Knight,* the Illinois Appellate Court found the alleged misrepresentations that the thermal banks were "as called for in the specifications" and had a "capacity of '100,000 pounds of ice at 2½ inch thickness' " to be specific, quantifiable and verifiable statements. *Murphy–Knight,* 187 Ill.Dec. 868, 618 N.E.2d at 464–65 (citations omitted). Furthermore, these statements concerned "the capabilities of a machine which was either in existence at the time the statements were made, or one of a known, specified, and certain type." *Id.* at 464. Thus, the court found that the statements were representations of existing fact, and as such, were actionable as fraud. *Id.* at 464–65. On the other end of the continuum is *Spiegel.* In *Spiegel,* the Illinois Appellate Court found the statements that a copier would produce " 'picture perfect copies' " and " 'reduce error waste' " to be subjective representations which would be difficult to prove. *Spiegel,* 81 Ill.Dec. 238, 466 N.E.2d at 1044 (citations omitted). Accordingly, the court found that these statements amounted to "mere commendation or opinion," and thus, were not actionable for fraud. *Id.*

Unlike *Lefebvre,* where this court found *Lefebvre* to fall closer to *Spiegel* on the continuum, this case falls closer to *Murphy–Knight.* Although, MAN Roland's alleged misrepresentations are similar to the statements in *Lefebvre* that the press "could produce the printing ... required in a commercially acceptable manner" and "could produce commercially acceptable four color process work," *Lefebvre,* 946

F.Supp. at 1363, the court, nevertheless, finds this case to be more similar to *Murphy–Knight.* In *Lefebvre,* this court found that "statements that the printing press could produce commercially acceptable four color process work were statements of opinion or promises about the future performance of a machine to be built ...; they were not statements about past or present facts." *Id.* at 1366. However, in this case, similar to *Murphy–Knight,* the alleged statements made by MAN Roland concerned the capabilities of a machine which was already in existence. Thus, these alleged misrepresentations must be considered representations of existing fact, and thus actionable as fraud. *See Murphy–Knight,* 187 Ill.Dec. 868, 618 N.E.2d at 464. Accordingly, this court will not strike Quantum's sixth amended affirmative defense on this ground.

### 2. *Quantum's reliance on the alleged misrepresentations*

MAN Roland also contends that Quantum's affirmative defense of fraudulent misrepresentation fails because the alleged misrepresentations were inconsistent with the terms of the contract. Thus, MAN Roland argues that Quantum's reliance on these statements was unjustified and unreasonable.

"Where the alleged misrepresentation is explicitly addressed and negated in the written agreement signed by the parties, any reliance on contrary oral assertions would be unreasonable as a matter of law." *Heritage Remediation/Eng'g, Inc. v. Wendnagel,* No. 89 C 413, 1989 WL 153373, at *7 (N.D.Ill. Nov.9, 1989); *see also Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.,* 941 F.2d 561, 571 (7th Cir.1991) ("Documents that unambiguously cover a point control over remembered (or misremembered, or invented) oral statements.") (citing *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511 (10th Cir. 1983)). However, the words in the written agreement must be "true, clear, and complete, in order to be dispositive." *Acme*

*Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1325 (7th Cir.1988).

In this case, the contract does not specifically contradict or negate any alleged prior oral statements. The phrase "the machinery ... is sold 'as is,'" (P.Compl. ¶ 11), is not clearly contrary to any of the alleged prior misrepresentations; nothing in the term "as is" should arouse a suspicion in Quantum that the press could not perform as specified in the alleged misrepresentations.[5] Thus, this court cannot determine, as a matter of law, that Quantum's reliance on the alleged misrepresentations was unreasonable and unjustified. Accordingly, the court denies MAN Roland's motion to strike Quantum's sixth amended affirmative defense on this ground.

In sum, Quantum's affirmative defense of fraudulent misrepresentation alleges a statement of material fact and reasonable reliance upon the alleged misrepresentations. Thus, this court denies MAN Roland's motion to strike Quantum's sixth amended affirmative defense.

## G. *Seventh amended affirmative defense—Fraudulent omissions*

In its seventh amended affirmative defense, Quantum alleges that MAN Roland fraudulently omitted certain material facts to induce Quantum into the contract. MAN Roland, however, contends that this affirmative defense fails for the same reasons Quantum's affirmative defense of fraudulent misrepresentation fails. *See supra* Part II.F.

■ Illinois courts recognize a cause of action for fraudulent omissions under certain circumstances. Under Illinois law, the failure to disclose material information (i.e., an omission) may be considered a false statement of fact, but only if the

person failing to disclose the information "owed a duty to disclose that information to the party across the bargaining table." *Equity Capital Corp. v. Kreider Transp. Serv. Inc.*, 967 F.2d 249, 253 (7th Cir.1992); *see also AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1040 (7th Cir.1990) ("For an omission to rise to the level of fraud, ... there must be a duty to disclose.").

In this case, neither party has even addressed whether MAN Roland had a duty to disclose the alleged omissions. Regardless of both parties considerable oversight, this court will dismiss this affirmative defense because Quantum has failed to allege in its affirmative defense that MAN Roland was under any duty to disclose the alleged omissions. Accordingly, the court grants MAN Roland's motion to strike Quantum's seventh amended affirmative defense.

## *CONCLUSION*

For the reasons set forth in this opinion, the court denies in part and grants in part plaintiff MAN Roland's motion to strike defendant Quantum's amended affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). Accordingly, the court enters the following orders:

1.  The court denies MAN Roland's Rule 12(f) motion to strike Quantum's third, fourth and sixth amended affirmative defenses.

2.  The court grants MAN Roland's Rule 12(f) motion to strike Quantum's first, second, fifth, and seventh amended affirmative defenses.

---

5. MAN Roland also alleges that the contract affirmatively represents "that MAN Roland had not made *any* representations regarding the Press and that it [Quantum] was not relying upon any such representations in entering into the [c]ontract." (Pl.Mot. at 6–7) (emphasis in original). However, MAN Roland has failed to cite this provision and the court has failed to find this provision. Thus, the court will not address any impact this provision may have.